

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-14-00414-CV

Whitney **BREWSTER**, in her capacity as Executive Director of the
Texas Department of Motor Vehicles,
Appellant

v.

Drew **ROICKI** and Richard Roicki as Successors in Interest to Pinnacle Motors,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-06565
Honorable Richard Price, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Concurring Opinion by:  Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
           Patricia O. Alvarez, Justice
           Luz Elena D. Chapa, Justice

Delivered and Filed:  May 13, 2015

AFFIRMED

Appellant Whitney Brewster, Executive Director of the Texas Department of Motor Vehicles, asserted immunity from suit in the underlying cause regarding TxDMV's decisions affecting four vehicle titles. The trial court denied her plea to the jurisdiction, and she appeals. Because Appellees raised a fact issue on whether Brewster acted without legal authority, which could invoke the *ultra vires* immunity exception, we affirm the trial court's order.

**BACKGROUND**

Pinnacle Motors applied for marketable titles for three vehicles through the Bexar County Tax Assessor-Collector (BCTAC). BCTAC issued title receipts for the vehicles, and in 2008, TxDMV issued titles to the three vehicles. In 2009, Pinnacle applied for a bonded title for a 2008 Chrysler Sebring, but TxDMV refused to issue a marketable title because a "[t]itle was previously issued in Michigan and [the vehicle title was] branded as 'scrap.'" In September 2009, TxDMV revoked the three titles it had issued earlier and noted the three vehicle's titles "should be branded as Nonrepairable."

In 2009, Pinnacle Motors sued Bexar County, BCTAC, and TxDMV.[1] Pinnacle complained that TxDMV improperly revoked three titles and refused to issue a fourth, and it sought an administrative hearing to review TxDMV's decision. *See* TEX. TRANSP. CODE ANN. § 501.052 (West Supp. 2014). Following the hearing, Pinnacle, Bexar County, and BCTAC settled the suit. Under the settlement, BCTAC conditionally agreed to "reissue rebuilt salvage titles" to the four vehicles and Pinnacle agreed to dismiss with prejudice its claims against all parties. Pinnacle met the conditions, and BCTAC filed Pinnacle's applications for rebuilt salvage titles, but TxDMV did not issue marketable titles.

In 2013, Pinnacle sued BCTAC, TxDMV, and Whitney Brewster in her official capacity as executive director of TxDMV.[2] TxDMV asserted its immunity from suit, the trial court denied its plea to the jurisdiction, and TxDMV appealed. This court dismissed Pinnacle's claims against TxDMV but did not address Pinnacle's claims against Brewster.[3]

---

[1] 2009-CI-18817.

[2] 2013-CI-06565.

[3] *Tex. Dep't of Motor Vehicles v. Pinnacle Motors*, No. 04-13-00496-CV, 2014 WL 631453, at *3 (Tex. App.—San Antonio Feb. 19, 2014, no pet.) (mem. op.) (dismissing claims against TxDMV); *id.* at *2 (noting "any claims against [Brewster] remain pending and are not a subject of this appeal").

In her March 2014 plea to the jurisdiction, Brewster asserts she is immune from suit because her actions were discretionary and lie outside the *ultra vires* immunity exception. Pinnacle[4] insists Brewster violated section 501.052 by refusing to abide by BCTAC's determination to issue marketable titles, and because she acted without lawful authority, the *ultra vires* exception waives her immunity from suit.

### *ULTRA VIRES* EXCEPTION, PLEA TO THE JURISDICTION

"'[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity'" but may proceed under the *ultra vires* exception. *Tex. Dep't of Ins. v. Reconveyance Servs., Inc.*, 306 S.W.3d 256, 258 (Tex. 2010) (per curiam) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)); *accord Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam). The *ultra vires* exception waives a government official's immunity in certain circumstances including where "the officer acted without legal authority." *Heinrich*, 284 S.W.3d at 372; *accord Sefzik*, 355 S.W.3d at 620.

For an *ultra vires* claim to survive a plea to the jurisdiction, the plaintiff must "allege[] facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also Heinrich*, 284 S.W.3d at 372. If the plaintiff's pleadings demonstrate jurisdiction but the defendant challenges the alleged facts, the trial court must determine whether a jurisdictional fact question exists. *See Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 305 (Tex. 2014) (noting the defendant bears the burden "to establish that it is a governmental entity entitled to governmental immunity" and the plaintiff must "establish, or at least raise a fact issue on, a waiver

---

[4] Appellees Drew Roicki and Richard Roicki filed voluntary bankruptcy petitions. In the cause underlying this appeal, the Roickis identify themselves as successors in interest to Pinnacle Motorcars. For consistency with our February 19, 2014 opinion in appeal number 04-13-00469-CV, we refer to the Roickis as Pinnacle.

of immunity"); *Miranda*, 133 S.W.3d at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28.

## STANDARD OF REVIEW

We may review the denial of a government official's plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2014); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 846 (Tex. 2007) (applying section 51.014(a)(8) to government officials sued in their official capacity); *see Miranda*, 133 S.W.3d at 221.

We review de novo the question of "whether [the trial] court has subject matter jurisdiction." *Miranda*, 133 S.W.3d at 226 (citing *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002)). We examine the plea to the jurisdiction evidence like "that of a [traditional] summary judgment." *Id.* at 228 (referencing TEX. R. CIV. P. 166a(c)); *accord Heinrich*, 284 S.W.3d at 372 (citing *Miranda*). We "take as true all evidence favorable to the nonmovant [and] indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228 (citation omitted); *accord Heinrich*, 284 S.W.3d at 372 (citing *Miranda*).

## PARTIES' ARGUMENTS

Pinnacle, in its 2013 suit underlying this appeal, asked the trial court to declare that section 501.052 of the Texas Transportation Code makes BCTAC's hearing determination final and binding on TxDMV. It argues that when BCTAC, after the hearing and as part of the settlement, agreed to "issue" rebuilt salvage titles to all four vehicles, BCTAC "overruled" (1) TxDMV's revocation of the three previously issued titles and (2) TxDMV's refusal to issue a fourth title. Pinnacle argues that section 501.052 makes BCTAC's determination final and binding on

TxDMV. Thus, because she failed to issue marketable titles as required by Pinnacle's settlement agreement with BCTAC, Brewster acted without legal authority and her immunity was waived.

Brewster argues her immunity has not been waived because there is no allegation that she personally took any action that was unlawful, TxDMV has discretion and final authority to determine whether and what type of title should be issued, and Pinnacle's suit is an impermissible attempt to control state action. She also argues recent legislation applies in this case to strip the trial court of authority to order a change in the type of title issued by TxDMV.

## ANALYSIS

We begin by determining whether Pinnacle's suit is barred by sovereign immunity.

### A. Sovereign Immunity

Generally, sovereign immunity shields state officials from both suit and liability. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008); *Koseoglu*, 233 S.W.3d at 844. As a defendant raising a plea to the jurisdiction, Brewster bears the burden to show she is immune from suit. *See Church & Akin*, 442 S.W.3d at 305; *Miranda*, 133 S.W.3d at 228. Brewster was sued in her official capacity as the executive director of TxDMV, and TxDMV is an agency of the State of Texas. Thus, Brewster is shielded by sovereign immunity for her discretionary, lawful acts. *See Heinrich*, 284 S.W.3d at 372; *see also Reconveyance Servs.*, 306 S.W.3d at 258.

### B. *Ultra Vires* Exception

However, if Brewster acted without legal authority in revoking or refusing to issue marketable titles, Pinnacle's suit may fall within the *ultra vires* exception.[5] *See Heinrich*, 284

---

[5] For Brewster's plea to the jurisdiction, Pinnacle is the nonmovant. *See* TEX. R. CIV. P. 166a(c); *Miranda*, 133 S.W.3d at 228. We accept Pinnacle's statements as true and make all reasonable inferences in its favor. *See Miranda*, 133 S.W.3d at 228; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). It is undisputed Brewster is executive director of TxDMV, and Pinnacle argues Brewster is responsible for TxDMV's title decisions. Brewster provides no

S.W.3d at 372; *see also Reconveyance Servs.*, 306 S.W.3d at 258. To determine whether Brewster acted without legal authority, we must first construe the statutes pertaining to issuing vehicle titles.

## C.      Issuing Vehicle Titles

An owner or purchaser of a vehicle who seeks a certificate of title[6] or a record of title[7] to a motor vehicle must submit an application to the appropriate county assessor-collector. TEX. TRANSP. CODE ANN. § 501.023; *Ferrell v. Price*, No. 02-10-00266-CV, 2011 WL 6415155, at *3 (Tex. App.—Fort Worth Dec. 22, 2011, no pet.) (mem. op.). The receiving county assessor-collector enters the application information in TxDMV's titling system and issues the applicant a title *receipt*, not a title. TEX. TRANSP. CODE ANN. §§ 501.024, .027; *Ferrell*, 2011 WL 6415155, at *3. After reviewing the application, TxDMV may issue a title of the appropriate type. TEX. TRANSP. CODE ANN. § 501.027 (requiring TxDMV to issue a title if it determines the statutory requirements have been met); *id.* § 501.051 (granting TxDMV discretion, on certain grounds, to refuse to issue a title); *Ferrell*, 2011 WL 6415155, at *3.

## D.      Refusing to Issue or Revoking Issued Titles

TxDMV has discretion to either refuse to issue a title or revoke a previously issued title if it determines, inter alia, "the applicant is not entitled to a title." TEX. TRANSP. CODE ANN. § 501.051(a)(3); *Ferrell*, 2011 WL 6415155, at *3. For cases where TxDMV refuses to issue or revokes a previously issued title, the legislature created a process to review TxDMV's decision. *See Ferrell*, 2011 WL 6415155, at *4.

---

evidence or authority to show she is not responsible for TxDMV's actions on the titles in question. Under a plea to the jurisdiction standard of review, we conclude Pinnacle raised a genuine issue of material fact on whether Brewster is responsible for the title decisions. *See Miranda*, 133 S.W.3d at 228.

[6] A certificate of title is a paper document. TEX. TRANSP. CODE ANN. § 501.002(1).

[7] A record of title is an electronic record in TxDMV's database. *Id.* § 501.002(21).

**E.    Process to Review Revocation**

The review process is given in section 501.052:

(a) An interested person aggrieved by a refusal, rescission, cancellation, suspension, or revocation under Section 501.051 may apply for a hearing to the county assessor-collector for the county in which the person is a resident. On the day an assessor-collector receives the application, the assessor-collector shall notify the department of the date of the hearing.

(b) The assessor-collector shall hold the hearing not earlier than the 11th day and not later than the 15th day after the date the assessor-collector receives the application for a hearing.

(c) At the hearing, the applicant and the department may submit evidence.

(d) A determination of the assessor-collector is binding on the applicant and the department as to whether the department correctly refused to issue or correctly rescinded, canceled, revoked, or suspended the title.

(e) An applicant aggrieved by the determination under Subsection (d) may appeal only to the county or district court of the county of the applicant's residence. An applicant must file an appeal not later than the fifth day after the date of the assessor-collector's determination. The judge shall try the appeal in the manner of other civil cases. All rights and immunities granted in the trial of a civil case are available to the interested parties. If the department's action is not sustained, the department shall promptly issue a title for the vehicle.

TEX. TRANSP. CODE ANN. § 501.052.

**F.    Effect of Assessor-Collector's Determination**

Before examining the statute, we briefly review the applicable principles of statutory construction.

*1.    Standard of Review*

We review questions of statutory construction de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)).

*2.    Statutory Construction*

"In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *City of Rockwall*, 246 S.W.3d at 625; *accord Koseoglu*, 233

S.W.3d at 840; *see also* TEX. GOV'T CODE ANN. § 311.023 (West 2013) ("Statute Construction Aids"). We presume the legislature acted with purpose when it included each word and excluded omitted words. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995). "If the statutory text is unambiguous, [we] must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results." *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004); *accord City of Rockwall*, 246 S.W.3d at 625–26.

### 3. *TxDMV's Authority over Vehicle Titles*

Under the plain language of the Transportation Code, TxDMV, not the county assessor-collector, issues vehicle titles. TEX. TRANSP. CODE ANN. § 501.027; *Ferrell*, 2011 WL 6415155, at *3. Further, TxDMV has some discretion as to the type of title it issues. TEX. TRANSP. CODE ANN. § 501.09112 (salvage vehicle title); *id.* § 501.09113 (rebuilt salvage vehicle titles); *id.* § 501.0935 (salvage pool vehicle titles). Moreover, under section 501.051, TxDMV may refuse to issue a title, or rescind, cancel, suspend, or revoke a title it has already issued. *Id.* § 501.051; *Ferrell*, 2011 WL 6415155, at *4.

### 4. *Assessor-Collector Review of TxDMV Decision*

On the other hand, section 501.052 unambiguously authorizes "[a]n interested person aggrieved by a refusal, rescission, cancellation, suspension, or revocation under Section 501.051 [to] apply for a hearing to the county assessor-collector for the county in which the person is a resident." TEX. TRANSP. CODE ANN. § 501.052(a). The county assessor-collector must hold a hearing to determine "whether [TxDMV] correctly refused to issue or correctly rescinded, canceled, revoked, or suspended the title." TEX. TRANSP. CODE ANN. § 501.052(b),(d). The county assessor-collector must immediately notify TxDMV of the hearing date. *Id.* § 501.052(a); *Ferrell*,

2011 WL 6415155, at *4. At the hearing, both parties may submit evidence. TEX. TRANSP. CODE ANN. § 501.052(c). The county assessor-collector may determine whether TxDMV correctly revoked a vehicle title, and its "determination . . . is binding on the applicant and [TxDMV]." *Id.* § 501.052(d).

The provision's plain language is clear: assuming any applicable statutory prerequisites are met, *see Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 511–12 (Tex. 2012) (statutory prerequisites), the county assessor-collector may review TxDMV's decision to refuse to issue a title or to revoke an issued title, and the assessor-collector's determination regarding the correctness of TxDMV's decision is binding on the applicant and TxDMV, TEX. TRANSP. CODE ANN. § 501.052(d). This straightforward construction "give[s] effect to the Legislature's intent as expressed by the language of the statute." *City of Rockwall*, 246 S.W.3d at 625; *accord Koseoglu*, 233 S.W.3d at 845 ("This construction is supported not only by the plain language of [the statute], but also by its logical application."). It also prevents a potentially endless loop of submitted, rejected, and resubmitted applications. *See City of Rockwall*, 246 S.W.3d at 625–26 (eschewing constructions yielding absurd results); *Mega Child Care*, 145 S.W.3d at 177 (same).

Therefore, we hold that section 501.052 authorizes a county assessor-collector to review the correctness of TxDMV's decision to refuse to issue or to rescind, cancel, revoke, or suspend a vehicle's title, and the assessor-collector's determination is binding on the applicant and TxDMV. *See* TEX. TRANSP. CODE ANN. § 501.052; *Ferrell*, 2011 WL 6415155, at *4.

5. *Appellate Review of Assessor-Collector's Determination*

Although the assessor-collector's determination is binding, the statute establishes a process to review the assessor-collector's determination.

### a.     Applicant's Right of Appeal

If the applicant is aggrieved by the assessor-collector's determination, the applicant may appeal to a county or district court. TEX. TRANSP. CODE ANN. § 501.052(e); *Ferrell*, 2011 WL 6415155, at \*3. If the applicant prevails, TxDMV must "promptly issue a title for the vehicle." TEX. TRANSP. CODE ANN. § 501.052(e). The statute does not specify what type of title TxDMV must issue, but the legislature's intent seems clear: TxDMV must issue the type of title as determined by the trial court subject to the limitations of section 501.0521. *See id.* §§ 501.052(d),(e), .0521.

If we were to ignore the plain language and conclude that TxDMV retained final authority over the vehicle title, such a construction could produce an absurd result. *See City of Rockwall*, 246 S.W.3d at 625–26 (eschewing constructions yielding absurd results); *Mega Child Care*, 145 S.W.3d at 177 (same). If the applicant prevailed in the trial court, TxDMV could nevertheless unilaterally vitiate the legislature's expressly established remedy. *See* TEX. TRANSP. CODE ANN. § 501.052(d),(e) (remedy).

### b.     No TxDMV Right of Appeal

Although the legislature expressly created a right for an aggrieved applicant to appeal the assessor-collector's determination, the statute's plain language contains no corresponding right for TxDMV. TEX. TRANSP. CODE ANN. § 501.052(e).

The protections for TxDMV's position are provided in the assessor-collector hearing process. The assessor-collector must notify TxDMV of the date of the hearing, the assessor-collector must hold the hearing, TxDMV must have an opportunity to present evidence, and TxDMV's right to appear and argue is implicit. *See id.*

Nevertheless, the statute does not authorize TxDMV to appeal the assessor-collector's determination, and we are left to conclude that the legislature's omission was intentional. *TGS-*

*NOPEC*, 340 S.W.3d at 439; *Laidlaw Waste Sys.*, 904 S.W.2d at 659. We presume the legislature acted reasonably when it created the assessor-collector review process which vests, with respect to TxDMV, the final determination for vehicle titles in the county assessor-collector. *See* TEX. TRANSP. CODE ANN. § 501.052; *Entergy*, 282 S.W.3d at 455–56 (Hecht, J., concurring) (citing TEX. GOV'T CODE ANN. § 311.021) (intending reasonable result). We recognize that under certain circumstances this construction transfers final authority over a vehicle's title from TxDMV to the assessor-collector, but the provision's plain language yields no other result, and the result is consistent with another provision. *See City of Rockwall*, 246 S.W.3d at 625–26; *Mega Child Care*, 145 S.W.3d at 177. Specifically, the legislature also transferred final authority over the vehicle's title to the county or district court if the applicant appeals the assessor-collector's determination. *See* TEX. TRANSP. CODE ANN. § 521.052(e); *Ferrell*, 2011 WL 6415155, at *4. Recently, the legislature narrowed the trial court's authority for certain vehicles, but it otherwise left the final authority on an applicant's appeal from the assessor-collector's determination with the trial court. TEX. TRANSP. CODE ANN. § 521.0521 (prohibiting the trial court from ordering TxDMV "to change the type of title" for certain vehicles); *see Ferrell*, 2011 WL 6415155, at *4.

### 6. Construing Section 501.052

Considering the plain language of the statute and reading it as a whole, we hold that under section 501.052, if the assessor-collector decides TxDMV's revocation under section 501.051 was incorrect, TxDMV's attempted revocation is void, and the previously issued title remains in effect. *See* TEX. TRANSP. CODE ANN. § 501.052. We further hold that if the assessor-collector decides TxDMV's refusal to issue a title under section 501.051 was incorrect, TxDMV must issue a title of the type determined by the assessor-collector, unless the applicant appeals the assessor-collector's determination to the county or district court. *See id.* §§ 501.052, .0521. Finally, we hold that in the event an applicant appeals the assessor-collector's determination to the county or

district court, section 501.052 requires TxDMV to promptly issue a vehicle title as ordered by the trial court subject to the limitations of section 501.0521.  *See id.*

### G.  Effect of Section 501.0521

Section 501.0521—which became effective on September 1, 2013—bars the trial court from ordering certain relief.  It reads as follows:

(a)  A justice of the peace or municipal court judge may not issue an order related to a title except as provided by Chapter 47, Code of Criminal Procedure, or Section 27.031(a)(3), Government Code.

(b)  A county or district court judge may not order the department to change the type of title for:

(1)  a nonrepairable vehicle titled after September 1, 2003; or

(2)  a vehicle for which the department has issued a certificate of authority under Section 683.054.

Act of May 26, 2013, 83d Leg., R.S., ch. 1135, § 53, 2013 Tex. Gen. Laws 2705, 2715 (codified at TEX. TRANSP. CODE ANN. § 501.0521 (West Supp. 2014)).  Section 501.0521 became effective on September 1, 2013.  *Id.* § 144, at 2737 ("Except as provided by Subsection (b) of this section, this Act takes effect September 1, 2013.").  Section 501.0521 prevents a trial court from ordering TxDMV to change the type of title for certain vehicles, but it does not prevent a county assessor-collector from changing the type of title issued by TxDMV.  TEX. TRANSP. CODE ANN. § 501.0521.

We hold section 501.0521 does not vitiate section 501.052's provision that binds TxDMV by the county assessor-collector's determination.  *Id.* § 501.052(d).  We also hold section 501.0521 does not prevent the trial court from ordering TxDMV to comply with the county assessor-collector's determination including ordering TxDMV to issue a title in accordance with the determination.  *See id.* §§ 501.052, .0521.

### H.  Trial Court Properly Denied Plea

Having construed the statute, we turn to the facts of this case.  Here, Pinnacle applied to BCTAC for three titles, TxDMV issued the titles, but subsequently revoked them.  *See* TEX.

TRANSP. CODE ANN. § 501.051. Pinnacle also applied for a title to the 2008 Chrysler Sebring, but TxDMV refused to issue a marketable title. *See id.* Pinnacle sought a hearing before BCTAC, and BCTAC conditionally agreed that all four vehicles should receive rebuilt salvage titles.[8] *See id.* § 501.052. Subsequently, TxDMV refused to issue marketable titles to the four vehicles. *Contra id.*

Under our holdings above, if the statutory prerequisites were met, TxDMV was bound by BCTAC's determination, and it had no right of appeal from that determination. *See id.* Specifically, if BCTAC determined TxDMV incorrectly refused to issue the 2008 Chrysler Sebring title and incorrectly revoked the three issued titles, and Brewster acted contrary to that determination, she may have done so without legal authority. *See id.*

Taking Pinnacle's evidence as true and making all reasonable inferences in its favor, *see Miranda*, 133 S.W.3d at 228, we conclude Pinnacle raised a genuine issue of material fact on whether the *ultra vires* exception applies, *see Sefzik*, 355 S.W.3d at 620; *Heinrich*, 284 S.W.3d at 372. Therefore, Brewster failed to meet her burden to conclusively disprove any waiver of her immunity, and the trial court properly denied her plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227–28.

## CONCLUSION

When the Texas Department of Motor Vehicles refused to issue or revoked vehicle titles under section 501.051 of the Texas Transportation Code, section 501.052 authorized Pinnacle to seek review of TxDMV's decisions regarding the vehicle titles. As Pinnacle has pled, the Bexar

---

[8] The parties refer to a hearing before BCTAC, but the appellate record contains no transcript of the hearing nor any written finding or conclusion from the hearing. The record from appeal number 04-13-00496-CV contains a copy of the October 18, 2011 "Full and Final Release" signed by Richard Roicki on behalf of Pinnacle Motors and by counsel for Bexar County. The release includes the terms of the settlement but does not contain express findings, conclusions, or determination of BCTAC.

County Tax Assessor-Collector held a hearing in accordance with section 501.052, and BCTAC determined the title questions in Pinnacle's favor.

Based on our holdings above, and assuming any statutory prerequisites were met, BCTAC's determination is binding on TxDMV. Taking Pinnacle's evidence as true and making all reasonable inferences in its favor, we conclude Pinnacle raised a genuine issue of material fact as to whether Brewster acted without legal authority by allegedly disregarding BCTAC's determination. Therefore, the *ultra vires* exception to immunity may apply, and the trial court did not err in denying Brewster's plea to the jurisdiction.

We affirm the trial court's order.

Patricia O. Alvarez, Justice