ACCEPTED
03-15-00259-CV
5660212
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/12/2015 2:50:55 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00259-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/15/2015 11:05:55 AM
JEFFREY D. KYLE
Clerk

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

_____

BECKY, LTD.,
*Becky*

v.

THE CITY OF CEDAR PARK, STEPHEN THOMAS, MATT POWELL, MITCH
FULLER, LYLE GRIMES, LOWELL MOORE, JON LUX, AND DON TRACY,
*Appellees*

_____

ON APPEAL FROM THE
126TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS

_____

## BRIEF OF APPELLANT

_____

ELIZABETH G. BLOCH
State Bar No. 02495500
Heidi.bloch@huschblackwell.com
Husch Blackwell LLP
111 Congress, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (fax)

LEONARD B. SMITH
State Bar No. 18643100
lsmith@leonardsmithlaw.com
P.O. Box 684633
Austin, Texas 78768
(512) 914-3732
(512) 532-6446 (fax)

*Attorneys for Becky, Ltd.*

## ORAL ARGUMENT REQUESTED

# INTERESTED PARTIES

**APPELLANT:**

Becky, Ltd. ("Becky")

**ATTORNEYS FOR APPELLANT:**

Elizabeth G. Bloch
Husch Blackwell LLP
111 Congress, Suite 1400
Austin, Texas 78701

Leonard B. Smith
P.O. Box 684633
Austin, Texas 78768

**APPELLEES:**

The City of Cedar Park (the "City"),
Stephen Thomas, Matt Powell,
Mitch Fuller, Lyle Grimes, Lowell
Moore, Jon Lux, and Don Tracy
(the "City Council"), collectively
referred to as "Appellees."

**ATTORNEYS FOR APPELLEES:**

Cobby Caputo
Bradley B. Young
Bickerstaff Health Delgado Acosta LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746

**ADDITIONAL PARTY BELOW:**

Milestone Community Builders, LLC
("Milestone"), a party to the
proceeding below prior to severance.

**ATTORNEYS FOR ADDITIONAL PARTY BELOW:**

Andrew F. York
Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701

i

# TABLE OF CONTENTS

INTERESTED PARTIES ...................................................................................... i

TABLE OF CONTENTS ..................................................................................... ii

INDEX OF AUTHORITIES ............................................................................... iv

STATEMENT OF THE CASE........................................................................... viii

STATEMENT REGARDING ORAL ARGUMENT ........................................... ix

ISSUES PRESENTED.........................................................................................x

STATEMENT OF FACTS ....................................................................................1

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT AND AUTHORITIES....................................................................6

    I.      Standard of review.......................................................................6

    II.     Becky's allegations.......................................................................7

         A.     The City Council's versus the Planning Commission's
               authority. ........................................................................8

         B.     The City Council has no authority to grant a waiver or
               variance to its Subdivision Ordinances...................................10

    III.    Appellees cannot claim governmental immunity from suit...............12

         A.     Because Becky's claims fall within the ultra vires
               exception to governmental immunity, Becky's claims
               against City officials are not barred. ......................................12

         B.     Because Becky is seeking declaratory relief for
               interpretation of municipal ordinances, governmental
               immunity does not bar Becky's claims against the City. .........12

    IV.    Becky's concrete and particularized injuries that resulted from
        the City's *ultra vires* actions give Becky standing to bring suit
        for declaratory relief.........................................................................19

    V.    The facts of Becky's case are sufficiently developed so that
        Becky is presenting the court with a justiciable controversy that
        is ripe for adjudication.....................................................................24

    VI.    Becky's claims are not moot because nothing has occurred
        while this litigation has been pending that would divest Becky
        of its interest in the claim. ...............................................................25

CONCLUSION ...........................................................................................28

CERTIFICATE OF COMPLIANCE.............................................................29

CERTIFICATE OF SERVICE .....................................................................29

APPENDIX .................................................................................................30

iii

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Hunt v. Washington State Apple Advertising Commission,*
    432 U.S. 333 (1977)..................................................................................22

## STATE CASES

*Bland Independent Sch. District v. Blue,*
    34 S.W.3d 547 (Tex. 2000)....................................................................6, 7

*Brewster v. Roicki,*
    No. 04-14-00414-CV, 2015 WL 2255145 (Tex. App.—San Antonio
    May 13, 2015)............................................................................................14

*Brown v. Todd,*
    53 S.W.2d 297 (Tex. 2001)......................................................................19

*City of Cedar Park. Texas Department of Transp. v. Sefzik,*
    355 S.W.3d 618 (Tex. 2011) ....................................................................18

*City of Corpus Christi v. Unitarian Church of Corpus Christi,*
    436 S.W.2d 923 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd
    n.r.e.) ..........................................................................................................8

*City of El Paso v. Heinrich,*
    284 S.W.3d 366 (Tex. 2009) ........................................................ 12, 13, 18

*City of Laredo v. Rio Grande H20 Guardian,*
    No. 04-10-00872-CV, 2011 WL 3122205 (Tex. App.—San Antonio
    July 27, 2011)............................................................................................22

*City of New Braunfels v. Tovar,*
    No. 03-14-00693-CV, 2015 WL 2183479 (Tex. App.—Austin May 7,
    2015) ..................................................................................................... 15, 16

*Cobb v. Harrington,*
    190 S.W.2d 709 (Tex. 1945) .....................................................................13

*Cokins v. City of Lakeway,*
    No. 03-12-00083-CV (Tex. App.—Austin, July 25, 2013, no pet.)....................7

*Creedmoor-Maha Water Supply Corp. v. Texas Commission on
    Environmental Quality,*
    307 S.W.3d 505 (Tex. App.—Austin 2010, no pet.)........................................14

*DaimlerChrysler Corp. v. Inman,*
    252 S.W.3d 299 (Tex. 2008) .....................................................................19

*Federal Sign v. Texas Southern University,*
  951 S.W.2d 401 (Tex. 1997) ..............................................................................12

*Finance Commission of Texas v. Norwood,*
  418 S.W.3d 566 (Tex. 2013) ..............................................................................21

*Heckman v. Williamson Cnty.,*
  369 S.W.3d 137 (Tex. 2012) ......................................................... 6, 19, 25, 26

*Hendee v. Dewhurst,*
  228 S.W.3d 354 (Tex. App.—Austin 2007, pet. denied) ..................................14

*In re Gruebel,*
  153 S.W.3d 686 (Tex. App.—Tyler 2005, pet. denied) ...................................26

*In re Sanchez,*
  81 S.W.3d 794 (Tex. 2002)..................................................................................9

*Lone Star College Sys. v. Immigration Reform Coalition of Texas,*
  (IRCOT), 418, 271 ............................................................................................18

*Meeker v. Tarrant County College District,*
  317 S.W.3d 754 (Tex. 2010) .............................................................................26

*Mission Consolidated I.S.D. v. Garcia,*
  372 S.W.3e 629 (Tex. 2012).................................................................................7

*National Collegiate Athletic Association v. Jones,*
  1 S.W.3d 83 (Tex. 1999)....................................................................................25

*Perry v. Del Rio,*
  66 S.W.3d 239 (Tex. 2001)................................................................................24

*Quick v. City of Austin,*
  7 S.W.3d 109 (Tex. 1999)............................................................................8, 27

*Robinson v. Parker,*
  353 S.W.3d 753 (Tex. 2011) .............................................................................24

*Save Our Springs Alliance, Inc. v. City of Austin,*
  149 S.W.3d 674 (Tex. App.—Austin 2004, no pet.)........................................26

*Save Our Springs Alliance, Inc. v. City of Dripping Springs,*
  304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied) .................................23

*Southwestern Bell Telephone, L.P. v. Emmett,*
  No. 13-0584, 2015 WL 1285326 (Tex. March 20, 2015) .................... 14, 15, 16

*State v. Gibson Products Co., Inc.,*
  699 S.W.2d 640 (Tex. App.—Waco 1985) .......................................................26

*Stop the Ordinances Please v. City of New Braunfels,*
    306 S.W.3d 919 (Tex. App.—Austin 2010, no pet.)..........................................20

*Texas A&M University-Kingsville v. Yarbrough,*
    347 S.W.3d 289 (Tex. 2011) ...............................................................26

*Texas Department of Parks & Wildlife v. Miranda,*
    133 S.W.3d 217 (Tex. 2004) ...............................................................6, 7

*Texas Department of State Health Services v. Balquinta,*
    429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dism'd).................................22

*Texas Department of Transp. v. Sefzik,*
    355 S.W.3d 618 (Tex. 2011) ...............................................................18

*Texas Department of Transp. v. Sunset Transp., Inc.,*
    357 S.W.3d 691 (Tex. App.—Austin 2011, no pet.)....................................14

*Texas Lottery Comm'n v. First State Bank of DeQueen,*
    325 S.W.3d 366 (Tex. 2009) ...............................................................18

*Texas Nat. Reserve Conservation Commission v. IT-Davy,*
    74 S.W.3d 849 (Tex. 2002)........................................................ 6, 12, 18

*V.E. Corp. v. Ernst & Young,*
    860 S.W.2d 83 (Tex. 1993)..................................................................26

*Waco Independent Sch. District v. Gibson,*
    22 S.W.3d 849 (Tex. 2000)..................................................................24

*Westbrook v. Penley,*
    231 S.W.3d 389 (Tex. 2007) ................................................................6

*Williams v. Lara,*
    52 S.W.3d 171 (Tex. 2001)........................................................ 19, 26

## STATUTORY AUTHORITIES

Tᴇx. Cᴏɴsᴛ, Aʀᴛ. XI § 5. .......................................................................8

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 37.002(b)...................................... 17, 18

Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 37.006(b).........................................18

## MISCELLANEOUS

City of Cedar Park Charter § 7.04 ........................................................9

City of Cedar Park Charter § 7.04(a) ...................................................16

City of Cedar Park Code of Ordinances § 12.03.004(a) .................................... 10, 18

City of Cedar Park Code of Ordinances § 12.03.004(b) .................................... 10, 16

City of Cedar Park Code of Ordinances § 12.03.006 ............................................ 18

City of Cedar Park Code of Ordinances § 12.15.003 ......................................... 2, 24

City of Cedar Park Code of Ordinances § 12.15.003(b) ............................................ 2

City of Cedar Park Code of Ordinances § 12.15.003(c) .............................. 2, 11, 18

City of Cedar Park Code of Ordinances § 12.15.003(c)(1) ..................................... 11

City of Cedar Park Code of Ordinances § 12.15.003(d) ..................................... 2, 11

City of Cedar Park Code of Ordinances § 12.15.006(a) .......................................... 16

## STATEMENT OF THE CASE

*Nature of Case:*       Becky, the owner of land that abuts a tract owned by Milestone Community Builders, LLC ("Milestone"), challenges the City's authority to grant Milestone variances to the subdivision infrastructure requirements in the City's subdivision ordinances through a contract with Milestone.

*Trial Court:*       The Honorable Tim Sulak of the 353rd Judicial District Court, Travis County, Texas.

*Trial Court's Actions:*       Judge Sulak granted Appellees' plea to the jurisdiction by order dated December 23, 2014 (I CR 244[1]; Appendix A), and denied Milestone's plea to the jurisdiction by order dated February 25, 2015 (II CR 6; Appendix B). The December 2014 order became final upon severance of Becky's claims against Appellees from its claims against Milestone on April 29, 2015 (II CR 23; Appendix C). Becky's claims against Milestone remain pending and abated in the severed action until completion of this appeal.

*Related Action:*       Becky previously filed a premature appeal in Case No. 03-15-00071-CV, incorrectly believing the order granting Appellees' plea to the jurisdiction to be a final order. Becky voluntarily dismissed that appeal.

---

[1] The clerk's record in the prior appeal was transferred into this case on May 6, 2015, and will be designated as "I CR." A second clerk's record was filed on June 10, 2015, and will be designated as "II CR."

## STATEMENT REGARDING ORAL ARGUMENT

Becky requests oral argument as it would assist this Court in understanding the facts and allegations of the parties and in analyzing the various possible grounds for the trial court's ruling.

# ISSUES PRESENTED

1.      Does governmental immunity bar Becky's claims against the individual City Council members when those officials acted without legal authority, placing their action within the *ultra vires* exception to governmental immunity?

2.      Does governmental immunity bar Becky's claims for declaratory relief against the City for interpretation of municipal ordinances if the Uniform Declaratory Judgment Act has waived immunity by requiring that the City be made a party?

3.      Does Becky have standing to assert its claims, having alleged that it was personally aggrieved by Appellees' action and has suffered concrete and particularized harm?

4.      Are Becky's claims ripe for adjudication if Becky's injuries are both presently concrete and sufficiently imminent due to Appellees' past failure to require timely completion of necessary subdivision infrastructure improvements?

5.      Are Becky's claims moot even though no subsequent change in the law or nullifying event has occurred to affect the controversy giving rise to Becky's claims?

## STATEMENT OF FACTS

Becky owns a 13.49-acre tract of land in Williamson County just to the northwest of a 37.59-acre tract owned by Milestone. Milestone's tract includes a road extension contemplated by the City—Old Mill Road—that would connect Milestone's and adjacent tracts to South Lakeline Boulevard, a major roadway.[2] The City's unbuilt but proposed extension of Old Mill Road would provide the only access to Becky's tract from South Lakeline Boulevard:[3]



One of a city's principal obligations is to provide for orderly growth and development within its corporate limits and extraterritorial jurisdiction. To help

---

[2] I CR 192.
[3] I CR 210.

AUS-6109557-4 521106/1

fund this expense, cities impose a share of the costs of municipal infrastructure improvements on owners and developers of land such as Milestone. Chapter 212 of the Local Government Code gives cities regulatory power over the subdivision of land. Pursuant to this grant of authority, the City has adopted a Subdivision Ordinance, § 12.01.001 et seq. of the City of Cedar Park Code of Ordinances ("Subdivision Ordinance").

The City's Subdivision Ordinance provides for a wide variety of subdivision improvements, whose construction is time sensitive. Section 12.15.003 requires that for final plat approval, an applicant such as Milestone must either complete all required subdivision improvements, or alternatively post a bond securing their completion, in which case the improvements must be completed within "… one (1) year of the date of final plat approval." City of Cedar Park Code of Ordinances §§ 12.15.003(b) and (c) (Appendix G). Section 12.15.003(d) imposes an automatic adverse consequence on an applicant who fails to timely complete construction of subdivision improvements: expiration of the final plat.

Becky's claims arise from a Unified Development Agreement (the "Agreement") entered into between the City, through the City Council, and Milestone. The City Council authorized the Agreement on September 12, 2013; the City's Planning and Zoning Commission (the "Planning Commission") approved Milestone's final plat on September 17, 2013; and the City executed the

2

Agreement on October 7, 2013.[4] That Agreement, contrary to the City's own Subdivision Ordinance, exempts Milestone from complying with its requirements, including the obligation to construct subdivision infrastructure and improvements such as roadways and utilities within a year from plat approval.

Specifically, the Agreement requires Milestone to complete "Phase 1" of Old Mill Road (see map on page 1), without a time deadline, and worse, it does not require Milestone to complete, timely or otherwise, "Phase 2" of the road.[5] This constitutes a waiver, exemption, or variance from the City's Subdivision Ordinance, which requires completion of the subdivision infrastructure within one year from plat approval. The issue in this case is whether the City Council had authority to grant Milestone that variance.

Orderly and timely completion of infrastructure such as roadways is crucial to continued development, particularly for development of adjoining tracts of land such as Becky's, as developed land must have roads that connect with the existing roadway system. Becky alleged that without the timely completion of Old Mill Road to the edge of Becky's property, its property remains landlocked, harming Becky by hindering its own development and reducing the value of the land or, alternatively, imposing costs on Becky that should have been borne by Milestone.[6]

---

[4] I CR 194.
[5] *See* I CR 199; Development Agreement at ¶ 3.
[6] I CR 195-96.

3

Becky brought this suit against both Appellees and Milestone, challenging the City's grant of a variance in the Agreement and seeking a declaration of its rights under the applicable statutes and ordinances. Both Appellees and Milestone filed pleas to the jurisdiction. Appellees' plea to the jurisdiction was based on governmental immunity, standing, mootness, and ripeness.[7] Milestone's plea was based on standing, mootness, and ripeness.[8] In December 2014, the trial court granted Appellees' plea to the jurisdiction without specifying which ground it believed supported the ruling.[9] Becky filed a motion for new trial, including a request that the court specify the basis for its ruling, pointing out, for example, that the grounds of mootness and lack of ripeness were mutually exclusive.[10] The trial court denied the motion and the request for specification.[11]

The trial court then denied Milestone's plea to the jurisdiction.[12] These inconsistent rulings suggest that the only ground upon which the trial court based its grant of Appellees' plea was governmental immunity, since that was the only ground asserted by Appellees but not Milestone. But because the trial court refused to specify the basis for its ruling, Becky must address all possible grounds in this appeal.

---

[7] I CR 38-47.
[8] I CR 72.
[9] I CR 244.
[10] I CR 245.
[11] I CR 254.
[12] II CR 6.

## SUMMARY OF THE ARGUMENT

When a plaintiff claims that public officials have acted without authority, i.e. acted *ultra vires*, governmental immunity is not implicated and the claim is not barred. Here, Becky contends that the City Council, having delegated sole authority to its Planning Commission to approve subdivision plats and grant variances to the requirements of the City's Subdivision Ordinance, had no authority to waive its ordinance requirements or effectively grant a variance to those requirements through a contract with a private entity. As a party directly and significantly impacted by the City's action, Becky has standing to challenge it and its claims are not moot and are ripe for adjudication.

Without the *ultra vires* Agreement, the Old Mill Road extension would have been built by now, connecting Becky's tract with South Lakeline Boulevard, or else Milestone's plat would have expired. The threat of plat expiration is the penalty that compels a developer to complete the required infrastructure in a timely manner. There is good reason why the City's own ordinances contain strict time limits for infrastructure completion after plat approval—subdivision development and the construction of improvements within those subdivisions must be completed in an orderly and timely fashion. It is the limbo resulting from the *ultra vires* Agreement that has harmed and devalued Becky's property.

## ARGUMENT AND AUTHORITIES

### I.    Standard of review.

At issue is whether the trial court erred in granting Appellees' plea to the jurisdiction, a ruling that should be reviewed *de novo* since whether a court has subject matter jurisdiction is a question of law. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Appellees' plea to the jurisdiction here was based on alleged governmental immunity, lack of standing, lack of ripeness, and mootness.

When considering a plea to the jurisdiction, courts must focus on the pleadings. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). The question here is whether Becky has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. Courts are required to construe the pleadings liberally in favor of the plaintiff, and unless challenged with evidence, accept all allegations as true and indulge every reasonable inference and resolve any doubts in favor of the plaintiff, as the nonmovant. *Id*. at 226-28.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 226; *Bland Indep.*

6

*Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). Here, because Appellees' jurisdictional challenge included evidence, the trial court was authorized to examine relevant evidence to determine if a fact issue existed. *Miranda*, 133 S.W.3d at 227. But in recognition of the concept that courts should not consider the merits of a plaintiff's case until jurisdictional challenges have been decided,[13] a trial court cannot grant a plea to the jurisdiction when a fact question regarding the jurisdictional issue exists. *Id.* at 227–28. As such, the standard of review of a plea to the jurisdiction mirrors review of summary judgments, so the question of "[w]hether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*." *Id.* at 226.

## II.     Becky's allegations.

This Court must decide whether Becky has *alleged* facts that, if true, invoke the jurisdiction of the trial court to adjudicate the claims. The merits of Becky's claims are not yet at issue.[14] It is nonetheless helpful to understand the substance of Becky's allegations. In a nutshell, Becky asserts that the City, having delegated sole authority to the City's Planning Commission to approve plats and grant variances, had no authority, through its City Council, to grant a variance to

---

[13] A "plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat an action 'without regard whether the claims asserted have merit'." *Mission Consol. I.S.D. v. Garcia*, 372 S.W.3e 629, 635 (Tex. 2012) (quoting *Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)).

[14] Appellees did not move for summary judgment on the merits of Becky's claims. *See Cokins v. City of Lakeway*, No. 03-12-00083-CV (Tex. App.—Austin, July 25, 2013, no pet.) (mem. op.) ("The City did not file a motion for summary judgment on the merits of the Landowners' claims, and therefore we express no opinion about the ultimate merits of those claims.").

7

Milestone. Without authority, the City Council's action in granting a variance through the Agreement was *ultra vires*, rendering at least that portion of the Agreement void.

### A.     The City Council's versus the Planning Commission's authority.

The City is a home-rule city. As such, it does not depend on the legislature for specific grants of authority but rather has a constitutional right of self-government and looks to the legislature only for specific limitations on its power. TEX. CONST, ART. XI, § 5; *Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex. 1999). As one court noted, in addressing the powers of a home rule city:

> The charter and ordinances of a home rule city must be construed in light of constitutional and statutory provisions as they pertain to the charter provisions relating thereto. No home rule charter or ordinance passed under the home rule statute shall contain any provision inconsistent with the general laws of the state. Such a home rule city possesses powers not denied by the statute or the constitution **so long as the City has incorporated those powers in its charter**. [citations omitted].
>
> Therefore, **if the City of Corpus Christi has such power, it must be found within the … provisions of its charter, the statutes or authorized ordinances**.

*City of Corpus Christi v. Unitarian Church of Corpus Christi*, 436 S.W.2d 923, 927 (Tex. Civ. App.—Corpus Christi 1968, writ ref'd n.r.e.) (emphasis added).

In other words, if the City's governing body, the City Council, has power to grant variances or waivers to the requirements of its Subdivision Ordinances, that power must be found in the statutes or in the City's charter or ordinances. But in

8

fact, the statute and the City's own charter and ordinances take that authority away from the City Council and delegate it solely to the City's Planning Commission. City of Cedar Park Charter §7.04 states that "The Planning and Zoning Commission shall … Exercise authority over platting and subdividing of land within and outside the corporate limits of the City as authorized by law." (Appendix E).[15] This delegation of authority to the Planning Commission is consistent with the legislative mandate in the Local Government Code.

For the legislature to divest a home-rule city of authority, the legislature's intent to do so must be expressed with "unmistakable clarity." *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). Here, the legislature has unmistakably divested the City's governing body of authority to approve subdivision plats, placing that authority in the hands of the City's Planning Commission:

> The municipal authority responsible for approving plats under this subchapter [Regulation of Subdivisions] is the municipal planning commission ….

TEX. LOCAL GOV'T CODE § 212.006 (a) (Appendix D). This same statute allows the governing body—the City Council—to have this authority only "if the

---

[15] The City's Charter can also be found at http://www.ci.cedar-park.tx.us/modules/showdocument.aspx?documentid=3818 at p. 18 (last visited on June 11, 2015).

municipality has no planning commission." *Id.* Since the City has a planning commission, the City Council has no authority to approve plats.

**B. The City Council has no authority to grant a waiver or variance to its Subdivision Ordinances.**

Consistent with the Local Government Code, the City's Subdivision Ordinance also delegates the authority to grant variances from its requirements solely to the Planning Commission:

> **Variances** from the terms of this chapter [Subdivision Regulation] **shall be granted by the planning and zoning commission under the conditions stated in the Texas Local Government Code**.

City of Cedar Park Code of Ordinances § 12.03.004(b) (Appendix F; emphasis added).[16] The ordinance further limits the Planning Commission's authority to grant a variance only upon a showing of "unnecessary hardship." *Id.* § 12.03.004(a). Milestone never attempted to make such a showing and the Planning Commission was never asked to consider whether a variance was authorized under this test.

As for the timing for completing subdivision infrastructure improvements—one of the key issues here—the City's Subdivision Ordinance requires completion within one year of final plat approval, and sets forth specific requirements for an applicant to seek and obtain approval for an extension of time, which can only be

---

[16] The City's Code of Ordinances can also be found at http://z2.franklinlegal.net/franklin/Z2Browser2.html?showset=cedarparkset (last visited on June 11, 2015).

granted by the Planning Commission. City of Cedar Park Code of Ordinances § 12.15.003(c) (Appendix G). Specifically, an applicant must show proof of hardship and submit certain documentation, whereupon the Planning Commission may recommend an extension to the City Council, but in any event, the extension cannot exceed an additional year. City of Cedar Park Code of Ordinances § 12.15.003(c)(1). None of that happened here. Milestone did not apply for a variance and the Planning Commission did not grant one.

The City's Subdivision Ordinance mandates that the failure to complete the required improvements within one year results in automatic expiration of the final plat approval. *Id.* § 12.15.003(d). Under the Subdivision Ordinance, and without a *properly* granted waiver by the only city entity with authority to grant one—the Planning Commission—Milestone's final plat approval would have expired. The Agreement, which purports to grant Milestone a waiver or variance from these otherwise binding requirements, is a nullity since the waivers and variances were granted by the City Council—an entity without authority to do so.

The key point here is that Becky has alleged that the city council acted without authority when it effectively granted variances to the City's Subdivision Ordinance through the Agreement with Milestone. The City, acting through its City Council, acted *ultra vires* when it granted that variance since the City Council had no such authority, having delegated that authority to the Planning Commission.

11

**III.**   **Appellees cannot claim governmental immunity from suit.**

**A.**   **Because Becky's claims fall within the *ultra vires* exception to governmental immunity, Becky's claims against City officials are not barred.**

When state officials act without legal or statutory authority, declaratory relief is available to parties against those officials to redress such violations of state law because they are not acts of the State. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *see also Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 404 (Tex. 1997) ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law."). In these situations, governmental immunity does not apply because Texas courts have recognized that suits claiming that officials acted without authority are not exactly suits against the State. *Heinrich*, 284 S.W.3d at 368. The underlying rationale is that such a suit's intention is not to find the State liable, but rather is to force state officials to act within their official capacity. *IT-Davy*, 74 S.W.3d at 855; *Federal Sign*, 951 S.W.2d at 404.

This rationale gave rise to the *ultra vires* exception to governmental immunity laid out in *City of El Paso v. Heinrich*, in which the Texas Supreme Court stated: "[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity…" because they do not attempt to control state action. *Heinrich*, 284 S.W.3d at 372. Becky's

action for declaratory relief does not attempt to control state action, and therefore governmental immunity as to the City Council is not implicated. Rather, Becky's purpose in bringing the present suit is to declare that City officials acted wrongfully and without legal authority, or in other words, *ultra vires*. *See Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945) ("The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of [governmental immunity].").

To qualify for the *ultra vires* exception to governmental immunity, a suit "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich* 284 S.W.3d at 372. In bringing this suit, Becky seeks to enforce the existing rules and regulations set forth in the City's Subdivision Ordinance and in the Texas Local Government Code, not alter discretionary government policies. Under this ordinance, the members of the Cedar Park City Council, acting on behalf of the City, had no authority to supersede the Planning Commission when they waived the subdivision requirements for Milestone in the Agreement.

To determine whether a party has asserted a claim that falls within the *ultra vires* exception to governmental immunity, courts will construe statutory provisions defining the scope of authority, apply them to the plaintiff's alleged facts, and decide whether those facts, as alleged, constitute acts that exceed the government official's authority or show failure to perform a purely ministerial act. *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701–702 (Tex. App.—Austin 2011, no pet.); *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 n.8 (Tex. App.—Austin 2010, no pet.) (quoting *Hendee v. Dewhurst*, 228 S.W.3d 354, 368–369 (Tex. App.—Austin 2007, pet. denied)).

If a statute does not leave room for interpretation or discretion, an action that violates the clear statutory mandate will be deemed *ultra vires*. *See Brewster v. Roicki*, No. 04-14-00414-CV, 2015 WL 2255145 (Tex. App.—San Antonio May 13, 2015) (affirming denial of a plea to the jurisdiction when the defendant had no statutory discretion to deviate from a decision of the tax assessor-collector). In many respects, this case is similar to *Southwestern Bell Telephone, L.P. v. Emmett*, No. 13-0584, 2015 WL 1285326, at *1 (Tex. March 20, 2015). In that case, the plaintiff brought an action for declaratory relief against the City of Houston and members of the County Commissioners' Court, the governing body of the Harris County Flood Control District, in light of an agreement between the city and the

14

district for demolition and reconstruction of various bridges. *Southwestern Bell* WL 1285326, at \*1. The plaintiff alleged that the commissioners engaged in *ultra vires* conduct when they ignored their statutory obligations under the Texas Water Code to pay for plaintiff's costs to relocate its facilities since the commissioners were the cause of the relocation. *Id.* at \*7–8.

The court held that the commissioners failed to comply with this statutory requirement and attempted to pass the expense onto the plaintiff, who was not a party to the city's agreement with the district. *Id.* Because the statute did not leave any room for discretion, the commissioners did not have the authority to decide who would bear relocation expenses. *Id.* at \*8. The court held that the commissioners' actions constituted *ultra vires* conduct, and therefore the trial court erred in granting the defendants' plea to the jurisdiction based on governmental immunity. *Id.*

Similarly, in *City of New Braunfels v. Tovar*, this Court affirmed an order denying a plea to the jurisdiction asserted by a municipality and three members of the city's civil service commission. *City of New Braunfels v. Tovar*, No. 03-14-00693-CV, 2015 WL 2183479 (Tex. App.—Austin May 7, 2015). In that case, the plaintiff argued that the commission members acted in contravention of the Texas Local Government Code when they denied him the statutorily-approved grant of extra points on a written examination that would make him eligible for promotion.

*Id.* By failing to comply with statutorily-mandated action, and without statutory discretion otherwise, the challenge to the commission members' actions invoked the trial court's jurisdiction through the *ultra vires* exception to governmental immunity. *Id.* at *4.

Our case is similar to *Southwestern Bell* and *Tovar* in that Becky has alleged that governmental officials have acted inconsistently with the mandates, requirements, and delegations of authority found in the relevant statutes and City ordinances.[17] As *Southwestern Bell* and *Tovar* explain, unauthorized conduct, which the City Council committed in this case, establishes *ultra vires* conduct.

As noted above, the Planning Commission derives its authority over the subdivision plat approval process from two distinct sources—the statute and the City's own Charter and Subdivision Ordinance. Section 212.006(a) of the Local Government Code states that "[t]he municipal authority responsible for approving plats under this subchapter is the municipal planning commission," and the City of Cedar Park Charter § 7.04(a) requires the Planning Commission to "exercise authority over platting and subdividing of land within and outside the corporate limits of the City as authorized by law." The Subdivision Ordinance vests the exclusive authority to approve and grant variances in the Planning Commission, and it may only do so upon a showing of unnecessary hardship. Sec. 12.03.004(b)

---

[17] I CR 192-96.

16

("[v]ariances from the terms of [the Subdivision Regulation chapter] shall be granted by the planning and zoning commission"). Nothing vests any discretion or authority in the City Council to approve or grant variances to the requirements of the Subdivision Ordinance.

Milestone could not have been granted a waiver from the one-year infrastructure completion mandate by any entity other than the Planning Commission. Any purported waiver or variance by the City Council is *ultra vires*, since that body does not have any authority to grant such a waiver or variance. The City Council cannot create authority by a contract with a private entity if that authority is delegated elsewhere by state law and the City's own charter and ordinances. Because the City Council acted without legal authority, governmental immunity does not bar Becky's claims against the individual Appellees to challenge that *ultra vires* conduct. And that challenge goes hand in hand with the declaratory relief Becky seeks against the City itself.

**B. Because Becky is seeking declaratory relief for interpretation of municipal ordinances, governmental immunity does not bar Becky's claims against the City.**

The stated purpose of the Uniform Declaratory Judgments Act (UDJA) is to provide parties with "relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE § 37.002(b). Without legislative waiver, however, governmental immunity bars actions against

17

political subdivisions of the state, such as the City of Cedar Park. *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011).

According to the Texas Supreme Court, section 37.006(b) of the UDJA contains such a waiver when a municipality's ordinances are at issue. This section requires that in an action for declaratory relief involving the validity or constitutionality of a municipal ordinance, "the municipality must be made a party," thereby waiving governmental immunity. TEX. CIV. PRAC. & REM. CODE § 37.006(b). Since § 37.002(b) is construed and administered liberally, courts have concluded that this waiver includes claims seeking *interpretation* of a statute or ordinance and is not limited to constitutionality or validity claims. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 634–35 (Tex. 2010); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009); *Lone Star Coll. Sys. v. Immigration Reform Coalition of Texas (IRCOT)*, 418 S.W.3d 263, 271 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Therefore, claims against a municipality seeking a declaration construing an ordinance and the rights of the parties thereunder are not barred by governmental immunity.

Here, Becky's rights and other legal relations are affected by the City's subdivision ordinances, and it is entitled to request declaratory relief for the proper construction and application of §§ 12.03.004(a) and (b), 12.03.006, and 12.15.003(c) of the City of Cedar Park's Subdivision Ordinances in light of Tex.

18

Local Gov't Code § 212.006, so that the court may determine the parties' rights, status, and legal relations under those ordinances. Because the UDJA requires that the City be joined as a party in Becky's suit seeking construction of these ordinances, the City cannot claim that governmental immunity bars the claims against it. Becky's claims against the City are therefore within the UDJA's legislative waiver of governmental immunity.

## IV. Becky's concrete and particularized injuries that resulted from the City's *ultra vires* actions give Becky standing to bring suit for declaratory relief.

The injury that Becky suffered as a result of the City's unlawful conduct is sufficiently distinct and particularized to grant Becky standing. A plaintiff with standing is one who suffers an alleged injury that is concrete, particularized, and actual or imminent. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008). A court's subject matter jurisdiction depends on the existence of a personal injury that is fairly traceable to the defendant's conduct and the likelihood that the court will be able to redress plaintiff's injury. *Brown v. Todd*, 53 S.W.2d 297, 305 (Tex. 2001) (noting that federal standing requirements may provide guidance to Texas courts); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). Additionally, a plaintiff must establish an "interest in a conflict distinct from that of the general public." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001); *Brown*, 53 S.W.2d at 302.

19

Restricting a person's use of property in a way that is economically harmful is recognized as a validly concrete, actual, and particularized injury for standing purposes. In *Stop the Ordinances Please v. City of New Braunfels*, the court found that the plaintiffs' injury was sufficient for standing purposes when they alleged that the City's ordinance prohibiting certain larger ice chests on the Guadalupe and Comal Rivers unreasonably restricted their rights to use and lease personal property. *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 928 (Tex. App.—Austin 2010, no pet.). Moreover, the ordinance caused plaintiffs actual and present injury by rendering valueless the larger ice chests that plaintiff had purchased for renting out to customers, and by causing them to incur additional expense to comply with the ordinance. *Id.*

A similar harm to Becky's property has occurred in this case in that the waiver or variance granted by the City to Milestone has denied and delayed Becky's ability to effectively use and develop its property. Moreover, the City's action has shifted development costs from Milestone's tract to Becky's tract, thereby reducing the market value of Becky's property. Without the *ultra vires* variance to the City's strict time deadlines for completion of subdivision infrastructure, Milestone would have been required to complete construction of the subdivision improvements by September 17, 2014, or its plat approval would have expired. The City's unauthorized conduct has rendered Becky's tract of land

stranded and landlocked for an indefinite period of time. The lack of access to the land has caused Becky to suffer an unreasonable restriction of its right to use and develop its property. This harm constitutes a concrete injury that is certainly traceable to the City's actions and may be redressed by a favorable judgment declaring the Milestone Agreement void to the extent it purports to grant a variance to the Subdivision Ordinance.

As the Texas Supreme Court has held, a plaintiff's standing, particularly when seeking declaratory relief, does not require that an actual legal injury or deprivation of a vested right has already occurred. It is sufficient to show a threat of impairment to the plaintiff's rights. In *Finance Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 583 (Tex. 2013), homeowners challenged a governmental entity's interpretation of a home equity loan statute and sought declaratory relief. The court held that the homeowners were not required to show they had already suffered harm. Instead, the homeowners had standing by showing that a prospective interest was impaired:

> The Homeowners need not allege a more imminent impairment to their rights or allege a threat with more specificity. While the certainty and extent of injury would become clearer as the time for closing a home equity loan approached, the terms were fixed, and the application of the Commissions' interpretations became apparent, to require a homeowner to wait to that point to challenge an interpretation would be to deny review or deny credit, or both.

Here, Becky's harm is not only threatened to increase in the future, it is immediate since the existence of the Agreement itself currently impairs the value of Becky's property. As this Court recently noted:

> we have recognized that even in the absence of vested rights or other legal entitlements to future transactions, a business can have standing to challenge the legality of governmental actions based on pleadings or proof that the actions impose regulatory burdens, damage or destroy markets for its services, or impede business opportunities.

*Texas Dep't of State Health Services v. Balquinta*, 429 S.W.3d 726, 741 (Tex. App.—Austin 2014, pet. dism'd). Significantly, Appellees did not challenge or negate Becky's allegations of both actual and threatened harm.

Texas courts have recognized an important element of the standing doctrine: substantial risk of injury is sufficient to confer standing. *City of Laredo v. Rio Grande H20 Guardian*, No. 04-10-00872-CV, 2011 WL 3122205, at \*5 (Tex. App.—San Antonio July 27, 2011). In *City of Laredo,* the plaintiffs correctly argued they possessed standing as property owners who were going to be adversely affected by new rezoning ordinances.[18] *City of Laredo*, 2011 WL 312205, at \*3–4. Although the negative effects from the ordinances had not yet materialized by the time of trial, the plaintiffs were nonetheless subject to a substantial risk of injury,

---

[18] The plaintiffs were members of a nonprofit corporation who were arguing for associational standing. In proving this, they were required to demonstrate that their members would otherwise have standing to sue in their own right. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (laying out a three-part test for associational standing).

which the court defined as a diminishment of plaintiffs' property values. *Id.* at *4. The court also rejected any argument that these injuries were hypothetical.

Lastly, Becky has been personally aggrieved by the City's conduct in a way that distinguishes Becky from the public at large. Becky's injury is not a hypothetical or generalized one that any member of the public could claim. The present controversy over the completion of necessary infrastructure improvements arises from the City's decision to act without legal authority in granting Milestone a variance under the Agreement, and that decision directly affects Becky's adjoining tract of land. Therefore, Becky has a unique, distinguishable, and personal interest in the property that has been directly and adversely affected by the City's unauthorized actions. *See Save our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 880 (Tex. App.—Austin 2010, pet. denied) (noting that although the plaintiffs' interest in property was not the subject of the contested action, the impairments to plaintiffs' property interest created a sufficiently particularized and distinct injury from that of the general public). This distinct and particularized injury, along with the actual and imminent threats to Becky's property rights, gives Becky standing to bring this suit.

**V. The facts of Becky's case are sufficiently developed so that Becky is presenting the court with a justiciable controversy that is ripe for adjudication.**

Just as Becky has standing to bring this suit based on its actual and imminent concrete injury, it necessarily follows that Becky's case is also ripe for adjudication. Justiciable claims require concrete injuries, but the ripeness doctrine mimics the standing doctrine in that a concrete injury that is likely to occur is sufficient for ripeness purposes. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000). "Although a claim need not be fully ripened at the time suit is filed, the facts must be developed sufficiently for the court to determine that an injury has occurred or is likely to occur." *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011); *Perry v. Del Rio*, 66 S.W.3d 239, 251 (Tex. 2001) (recognizing that cases may ripen after filing if the sufficiently developed facts allow the court to discern an injury that has or will likely occur).

Here, Becky has suffered both presently and imminently concrete injury. Presently, the City's purported failure to timely require the completion of Old Mill Road as mandated by the City of Cedar Park Ordinances § 12.15.003 has caused Becky to incur diminishing property values or increased development costs, which will continue into the future if the controversy between the parties is not resolved. Further, the restriction on Becky's use and access to its property is an infringement on Becky's property rights. In addition to assuredly decreased future property

24

value, Becky's already existing standing was bolstered by the fact that during the pendency of this action, Becky submitted its own application for a preliminary plan and final plat on its tract of land on October 24, 2014.[19] The City indicated in its response to this filing that Becky may be required to bear the expenses for the Old Mill Road extension itself, instead of requiring Milestone to bear the expenses.[20] The imminence of this additional harm supplements Becky's concrete injuries that have already occurred and give rise to a justiciable controversy.

There is nothing contingent about Becky's injuries, and the facts of this controversy are sufficiently developed to allow it to be justiciable. The City's *ultra vires* actions have indefinitely landlocked Becky's tract of land. This is a current fact; it is not hypothetical. The present and future diminution of the land's property value does not depend on hypothetical facts or situations that have not come to pass. Thus, Becky's claims constitute a justiciable controversy that is ripe for adjudication.

**VI.  Becky's claims are not moot because nothing has occurred while this litigation has been pending that would divest Becky of its interest in the claim.**

If a justiciable controversy ceases to exist while litigation is pending, the case has become moot and the court cannot exercise its jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012); *Nat'l Collegiate Athletic*

---

[19] I CR 195.
[20] I CR 196.

*Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). A case may become moot when the issues presented are not "live" or the parties no longer have a legally cognizable interest in the outcome since the time of filing. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). Additionally, moot claims are those for which a court's judgment on the merits will have no effect on the parties' rights or interests. *Heckman*, 369 S.W.3d at 162; *V.E. Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993).

Events that occur outside the courtroom during the pendency of litigation but have an effect on the existence of a justiciable controversy may render a claim moot. *See Texas A&M University-Kingsville v. Yarbrough*, 347 S.W.3d 289, 291 (Tex. 2011) (declaring a professor's claim that a negative performance evaluation undermined her application for tenure moot when the university awarded her tenure); *Meeker v. Tarrant County College Dist.*, 317 S.W.3d 754, 762 (Tex. 2010) (concluding that plaintiff's claims for injunctive and declaratory relief against a district chancellor were moot when a contract ended the chancellor's service to the district). A claim may also become moot if the law on which the claim hinges is changed or it no longer rests on any existing right or fact. *See In re Gruebel*, 153 S.W.3d 686, 690 (Tex. App.—Tyler 2005, pet. denied) (confirming plaintiff's claims became moot when the City amended its zoning ordinance); *State v. Gibson Products Co., Inc.*, 699 S.W.2d 640 (Tex. App.—Waco 1985) (ruling that the

State's action to enjoin a corporation from violating a certain law was moot when the law was repealed).

In its plea to the jurisdiction, the City relied upon *Save Our Springs Alliance, Inc. [SOS] v. City of Austin*, 149 S.W.3d 674 (Tex. App.—Austin 2004, no pet.), in an attempt to demonstrate mootness. But that case merely highlights why the claims here are *not* moot. In *SOS*, the plaintiff challenged a development agreement as being contrary to an ordinance. While the case was pending, however, the city "amended the Ordinance according to the terms of the development agreement. This amendment was a legislative act by the City." *SOS*, 149 S.W.3d at 681. In other words, the city legislatively amended its ordinance, which the city had the right and authority to do, so that the development agreement no longer conflicted with the ordinance. This mooted the plaintiff's argument that there was a conflict since the conflict no longer existed.

No such facts are present here. The City has *not* amended its Subdivision Ordinance, and certainly not in a manner that would resolve the conflict between the Agreement and the requirements of the Ordinance. Nothing has occurred in this case to eradicate the justiciable controversy or strip Becky of the interests it seeks to protect. Not only are the City's applicable ordinances still in effect, but no new legislation since the time of filing supersedes any existing law. Therefore, Becky's

claims are not moot as a result of any subsequent event or amendment to the applicable law.

## CONCLUSION

Trial courts are often too quick to dismiss lawsuits on alleged jurisdictional grounds, depriving plaintiffs such as Becky of an opportunity to address the merits of their claims. Governmental immunity does not bar Becky's claims against either the City itself or the City Council members in their official capacities. The *ultra vires* exception to governmental immunity and the UDJA's implied waiver of immunity for acts taken without legal authority are both applicable here, providing the trial court with subject matter jurisdiction to reach the merits.

In addition, Becky has alleged particularized injuries that are sufficiently concrete and imminent to confer Becky with standing and a claim ripe for adjudication that has not become moot. Becky therefore requests that this Court reverse the judgment below and remand the case to the trial court. Becky requests such other relief to which it may be entitled.

Respectfully submitted,

HUSCH BLACKWELL, L.L.P

BY:*/s/ Elizabeth G. Bloch*
    ELIZABETH G. BLOCH
    Texas Bar No. 02495500
    Heidi.bloch@huschblackwell.com
    111 Congress Avenue, Suite 1400
    Austin, Texas 78701

28

(512) 472-5456
(512) 479-1101 (facsimile)

Leonard B. Smith
Texas Bar No. 18643100
lsmith@leonardsmithlaw.com
P.O. Box 684633
Austin, Texas 78768
(512) 914-3732
(512) 532-6446 (facsimile)

*Attorneys for Becky, Ltd.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document contains 6,467 words, according to the word count of the computer program used to prepare it, in compliance with Rule 9.4(i)(2).

*/s/ Elizabeth G. Bloch*
Elizabeth G. Bloch

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record via electronic filing and/or facsimile on the 12th day of June, 2015:

Cobby Caputo
ccaputo@bickerstaff.com
Bradley B. Young
byoung@bickerstaff.com
Bickerstaff Heath Delgado Acosta LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746

*/s/ Elizabeth G. Bloch*
Elizabeth G. Bloch

**APPENDIX**

**A.**    Order Granting Defendants' Plea to the Jurisdiction

**B.**    Order Denying Defendant Milestone Community Builders LLC's Plea To The Jurisdiction And Motion To Dismiss For Lack Of Jurisdiction

**C.**    Order Granting Plaintiff's Motion To Sever And Abate

**D.**    TEX. LOCAL GOV'T CODE § 212.006 (a)

**E.**    City of Cedar Park Charter – selected excerpts

**F.**    City of Cedar Park Subdivision Ordinance – *Sec. 12.03.004 Variances*

**G.**    City of Cedar Park Subdivision Ordinance – *Sec. 12.15.003 Completion of Improvement*

Filed In The District Court
of Travis County, Texas

DEC 23 2014

At _____ 11:30 A M.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-14-001293

| | | |
|---|---|---|
| BECKY, LTD., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| MILESTONE COMMUNITY | § | |
| BUILDERS, LLC, THE CITY OF | § | |
| CEDAR PARK, ET AL., | § | |
| | § | |
| Defendants. | § | 126TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANTS' PLEA TO THE JURISDICTION

Came to be considered, Defendants City of Cedar Park, Texas, Matt Powell, Stephen Thomas, Mitch Fuller, Lyle Grimes, Lowell Moore, Jon Lux, and Don Tracy's Plea to the Jurisdiction in the above-entitled and numbered cause of action. The Court, after consideration, is of the opinion that the Plea to the Jurisdiction should be GRANTED.

It is therefore, ORDERED, ADJUDGED and DECREED, that each of the Plaintiff's claims filed against Defendants City of Cedar Park, Texas, Matt Powell, Stephen Thomas, Mitch Fuller, Lyle Grimes, Lowell Moore, Jon Lux, and Don Tracy in the above referenced cause of action that challenge the validity of the Development Agreement between the City and Defendant Milestone Community Builders LLC, or that seek to declare plaintiff's rights in relation to the agreement, are hereby dismissed with prejudice to refiling.

SIGNED this 23RD day of DEC. , 2014.

_____
Presiding Judge
TIM SULAK

APPENDIX A

244

Filed in The District Court
of Travis County, Texas

FEB 25 2015

At_____ 10:00 ᴀ.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-001293

| | | |
|---|---|---|
| BECKY, LTD., | § | IN THE DISTRICT COURT |
|    *Plaintiff*, | § | |
| | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| MILESTONE COMMUNITY BUILDERS | § | |
| LLC, THE CITY OF CEDAR PARK, et al., | § | |
|    *Defendants*. | § | 126th JUDICIAL DISTRICT |

## ORDER DENYING DEFENDANT MILESTONE COMMUNITY BUILDERS LLC'S PLEA TO THE JURISDICTION AND MOTION TO DISMISS FOR LACK OF JURISDICTION

After considering Defendant Milestone Community Builders, LLC's ("Milestone") Plea to the Jurisdiction and Motion to Dismiss for Lack of Jurisdiction, the evidence, and arguments presented, the Court finds that Plaintiff's Motion should be DENIED.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Milestone's Plea to the Jurisdiction and Motion to Dismiss for Lack of Jurisdiction is hereby DENIED.

SIGNED this ___25TH___ day of February, 2015.

TIM SULAK
JUDGE PRESIDING

Case # D-1-GN-14-001293

003909435

APPENDIX B

6

CAUSE NO. D-1-GN-14-001293

| | | |
|---|---|---|
| BECKY, LTD. | § | IN THE DISTRICT COURT OF THE |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | 126th JUDICIAL DISTRICT COURT |
| | § | |
| MILESTONE COMMUNITY | § | |
| BUILDERS, LLC, THE CITY OF | § | |
| CEDAR PARK, ET AL., | § | |
| | § | |
| DEFENDANTS. | § | TRAVIS COUNTY, TEXAS |

## ORDER
## GRANTING PLAINTIFF'S MOTION TO SEVER AND ABATE

On the 29th day of April, 2015, came on to be considered Plaintiff's Motion to Sever and Abate. After considering the motion, the response, and the pleadings, and hearing the arguments of counsel, the court finds that Plaintiff's Motion to Sever and Abate should be granted.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff's Motion to Sever and Abate shall be granted as follows:

1) Becky, LTD's claims against Milestone Community Builders, LLC shall be and are hereby severed from this main action into a new cause with a new cause number, to be styled Becky, LTD v. Milestone Community Builders, LLC,;    D-1-GN-15-001247    98TH

2) the newly severed claims against Milestone Community Builders, LLC shall be and are hereby abated until completion of the anticipated appeal in the main action or until further order of this Court;

3) this Court's Order dated December 23, 2014, dismissing Becky, LTD's claims against Defendant City of Cedar Park and the individual Defendants, is now a final and appealable judgment; and

AUS-6096634-1

APPENDIX C

23

DC     BK15121 PG522

**D-1-GN-14-001293**

4) in the event any of Becky LTD's claims against Defendant City of Cedar Park and/or the individual Defendants are remanded to this Court after appeal, the severed action shall be reconsolidated with the main action.

Signed this **29** day of ___April___ , 2015.

_____
Judge Presiding

AUS-6096634-1

APPENDIX C

24

**Texas Local Government Code**

Title 7. Regulation of Land Use, Structures, Businesses, and Related Activities
Subtitle A. Municipal Regulatory Authority
Chapter 212. Municipal Regulation of Subdivisions and Property Development
Subchapter A. Regulation of Subdivisions

## § 212.006.  Authority Responsible For Approval Generally

(a) The municipal authority responsible for approving plats under this subchapter is the municipal planning commission or, if the municipality has no planning commission, the governing body of the municipality. The governing body by ordinance may require the approval of the governing body in addition to that of the municipal planning commission.

…

**City of Cedar Park Charter**

*Section 2.02 General Powers Adopted*

The City shall have, and may exercise, all the powers enumerated in Article 1175, Chapter 13, Title 28, of the Revised Civil Statutes of the State of Texas of 1925 as now or hereafter amended; with exclusions or alterations that may be specifically included in this Charter.

*Section 3.07 General Powers and Duties*

All powers of the City shall be vested in the Council, except as otherwise provided by law or this Charter, and the Council shall provide for the exercise thereof and for the performance of all duties and obligations imposed on the City by law.

*Section 7.04 Planning and Zoning Commission: Powers and Duties*

The Planning and Zoning Commission shall:

(a) Exercise authority over platting and subdividing of land within and outside the corporate limits of the City as authorized by law;

(b) Recommend to the Council approval or disapproval of proposed changes in the City's Zoning Ordinance and Plan;

(c) Recommend to the Council plans for the physical development of the City; and

(d) Perform all other functions of the Planning and Zoning Commission under the laws of the State of Texas.

# City of Cedar Park Subdivision Ordinance

*Sec. 12.03.004 Variances*

(a) When an applicant can show that a provision of these regulations would cause unnecessary hardship if strictly adhered to and where, because of some condition peculiar to the site in the opinion of the planning and zoning commission, a departure may be made without destroying the intent of such provisions, the **planning and zoning commission** may authorize a variance.

(b) Variances from the terms of this chapter shall be granted by the planning and zoning commission under the conditions stated in the Texas Local Government Code, and provided further that the planning and zoning commission shall have no authority to grant a variance based on a special or unique condition which was created as a result of the method by which a person voluntarily subdivides that land, and provided that pecuniary hardship to the applicant, standing alone, shall not be deemed to constitute grounds for a variance.

(c) A variance may be applied for as part of a plat or replat request or as a separate request if the property is already platted. The applicant shall be responsible for providing all necessary information pertinent to the request, including the justification for such variance.

# City of Cedar Park Subdivision Ordinance

*Sec. 12.15.003 Completion of improvements*

(a) Prior to the signing of the approved final plat by the chairman of the planning and zoning commission and the planning director, the applicant shall:

> (1) Complete all improvements required by this chapter in accordance with the approved construction plans ….
> …

(b) Alternative to completing improvements. The city may waive the requirement that the applicant complete all improvements required by this chapter prior to the signing of the approved final plat, contingent upon securing from the applicant a guarantee, as provided for by this section, for completion of all required improvements …. Such guarantee shall take one (1) of the following forms:

> (1) Performance bond. The applicant shall post a performance bond with the city, as set forth herein, in an amount equal to one hundred ten percent (110%) of the estimated construction costs for all remaining required improvements, using the standard city form.
> …

(c) Time limit for completing improvements. The period within which required improvements must be completed shall be incorporated in the surety instrument and shall not in any event, without prior approval of the city, exceed one (1) year from date of final plat approval.

> (1) The **planning and zoning commission** may, upon application of the applicant and **upon proof of hardship**, recommend to the council extension of the completion date set forth in such bond or other instrument for a maximum period of one (1) additional year. …

(d) Failure to complete improvements. Approval of final plats shall be deemed to have expired in subdivisions for which no assurances for completion have been posted or the improvements have not been completed within one (1) year of final plat approval, unless otherwise approved by the city. In those cases where a surety instrument has been required and improvements have not been completed within the terms of said surety instrument, the city may declare the applicant and/or surety to be in default and require that all the improvements be installed. …