ACCEPTED
03-16-00254-CV
13895060
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 9:51:21 AM
JEFFREY D. KYLE
CLERK

**No. 03-16-00254-CV**

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 9:51:21 AM
JEFFREY D. KYLE
Clerk

———————

MICHAEL MORATH, IN HIS OFFICIAL CAPACITY AS TEXAS
COMMISSIONER OF EDUCATION; AND MICHAEL BERRY, IN HIS
OFFICIAL CAPACITY AS DEPUTY COMMISSIONER OF EDUCATION,

*Appellants*,

*v.*

PROGRESO INDEPENDENT SCHOOL DISTRICT,

*Appellee.*

———————

On Appeal from the
354th Judicial District Court, Travis County

———————

## REPLY BRIEF OF APPELLANTS

———————

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General

KRISTOFER S. MONSON
Assistant Solicitor General
State Bar No. 24037129
*kristofer.monson@oag.texas.gov*

Counsel for Appellants

# TABLE OF CONTENTS

Page(s)

Index of Authorities ............................................................................................iv

Argument.............................................................................................................2

    I.    The Commissioner's Actions Are Not Subject to Judicial Review. ............3

    II.   There is No *Ultra Vires* Jurisdiction..........................................................6

        A.   The Management Team's Two-Year Tenure Triggers section 39.102(b), Regardless of Whether the Commissioner Initialed a Series of Circulation Labels. ...........................................................6

            1.    The quarterly-reports issue is a red herring. ................................7

            2.    The quarterly-reports issue exemplifies the unconstitutional scope of the District's view of the ultra vires cause of action. ............................................................................................8

        B.   The Three Governance Failures Support the Commissioner's Exercise of Discretion. .................................................................... 10

        C.   Sections 39.057 and 39.102 Also Preclude an *Ultra Vires* Claim. ................................................................................................ 10

            1.    The 2015 amendments to section 39.057(d)(2) apply in this case. ......................................................................................... 10

            2.    There are No Procedural Requirements to render an SAI valid.......................................................................................... 12

                a.   The document on which the District relies does not govern SAIs. ....................................................................... 13

                b.   Even if it did control, there would be no procedural defect that subjected the Commissioner's actions to collateral judicial attack....................................................... 14

        D.   The Finality Provisions Are Independently Dispositive of the Claim. ........................................................................................... 16

        E.   The District's Various Arguments Regarding the Scope of the *Ultra Vires* Cause of Action Fail. ....................................................... 17

        F.   The District's remaining procedural arguments fail. .........................22

    III.  The Rights of the District are Not Implicated by the Commissioner's Actions and Cannot Support a Finding of Harm. ..........23

IV. The District is Not Entitled to a Remand to Raise New Legal Theories. ..................................................................... 25

Prayer ........................................................................................ 26

Certificate of Service................................................................... 27

Certificate of Compliance ........................................................... 27

iii

# Index of Authorities

Page(s)

## Cases

*AEP Tex. Commercial & Indus. Retail Ltd P'Ship v. Pub. Util. Comm'n,*
436 S.W.3d 890 (Tex. App.—Austin 2014, no pet.)........................................ 17

*Bacon v. Tex. Historical Comm'n,*
411 S.W.3d 161 (Tex. App.—Austin 2013, no pet.) .........................................9

*Brewster v. Roicki,*
468 S.W.3d 134 (Tex. App.—San Antonio 2015, no pet.) ...............................20

*City of Austin v. Central Appraisal District,*
No. 03-16-00038-CV, 2016 WL 6677937 (Tex. App.—Austin
November 10, 2016, no pet. h.) ....................................................................24

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009) ....................................................... 6, 18, 19, 20

*City of New Braunfels v. Tovar,*
463 S.W.3d 913 (Tex. App.—Austin 2015, no pet.).......................................20

*Clint Indep. Sch. Dist. v. Marquez,*
487 S.W.3d 538 (Tex. 2016)........................................................................25

*Combs v. City of Webster,*
311 S.W.3d 85 (Tex. App.—Austin 2009, pet. denied).................................. 21

*Continental Cas. Ins. Co. v. Functional Restoration Assocs.,*
19 S.W.3d 393 (Tex. 2000).................................................................... 21-22

*County of La Salle v. Weber,*
No. 03-14-00501-CV, 2016 WL 1084100 (Tex. App.—Austin 2016,
no pet.) (mem. op.) ..................................................................................... 18

*Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envt'l Quality,*
307 S.W.3d 505 (Tex. App.—Austin 2010, no pet.) ....................................... 19

*Federal Sign v. Texas Southern University,*
951 S.W.2d 401 (Tex. 1997) ...................................................................17, 19

*Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Authority,*
96 S.W.3d 519 (Tex. App.—Austin 2002, pet. denied) ................................... 15

*Gattis v. Duty,*
349 S.W.3d 193 (Tex. App.—Austin 2011, no pet.).........................................6

*Gen. Servs. Comm'n v. Little-Tex Insulation Co.*,
39 S.W.3d 591 (Tex. 2001) ..................................................... 18

*Houston Belt & Terminal Railway Co. v. City of Houston*,
487 S.W.3d 154 (Tex. 2016) ...............................................17, 18

*In re Office of the Att'y Gen.*,
456 S.W.3d 153 (Tex. 2015) ..................................................... 19

*Klumb v. Houston Mun. Emps. Pension Sys.*,
458 S.W.3d 1 (Tex. 2015) ...................................................12, 18

*Livingston v. Beeman*,
408 S.W.3d 566 (Tex. App.—Austin 2013), *aff'd* 468 S.W.3d 534
(Tex. 2015) ...........................................................................9

*Marks v. United States*,
430 U.S. 188 (1977) ......................................................... 16-17

*Merritt v. Cannon*,
No. 03-10-00125-CV, 2010 WL 3377778 (Tex. App.—Austin 2010)
(mem. op.) ..................................................................... 19, 20

*Morath v. La Marque Indep. Sch. Dist.*,
No. 03-16-00062-CV, 2016 WL 3517955 (Tex. App.—Austin 2016,
no pet.) (mem. op.) ....................................... 4-5, 12, 16, 18, 19

*Morath v. Sterling City Indep. Sch. Dist.*,
No. 14-0986, 2016 WL 3537025 (Tex. 2016) .................................. 16

*N. Alamo Water Supply Corp. v. Tex. Dep't of Health*,
839 S.W.3d 455 (Tex. App.—Austin 1992, writ denied) ..................20

*Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*,
176 S.W.3d 746 (Tex. 2005) ...............................................23-24

*Pharmserv, Inc. v. Tex. Health & Human Servs. Comm'n*,
No. 03-13-00526-CV, 2015 WL 1612006 (Tex. App.—Austin 2015,
no pet.) (mem. op.) ............................................................. 15

*Stone v. Tex. Liquor Control Bd.*,
417 S.W.2d 385 (Tex. 1967) ..................................................22

*Tex. Educ. Agency v. Amer. Youthworks, Inc.*,
496 S.W.3d 244 (Tex. App.—Austin 2016, pet. filed)......................18

*Tex. Logos, LP v. Tex. Dep't of Transp.*,
241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.) ........................ 15

v

*Tex. Parks & Wildlife Dep't v. The Sawyer Trust*,
354 S.W.3d 384 (Tex. 2011) ............................................................ 19

*Univ. of Tex. Med. Branch at Galveston v. York*,
871 S.W.2d 175 (Tex. 1994) ............................................................ 16

**Constitutional Provisions, Statutes, and Rules**

TEX. CONST., art. II, § 1 ................................................................. 8, 9

TEX. CONST., art. VII, § 1 .................................................................. 25

TEX. EDUC. CODE:

§ 39.057 ................................................................................... 4, 11

§ 39.057(a)(15) ............................................................................. 5

§ 39.057(d) .............................................................................. 10, 21

§ 39.057(d)(2) .............................................................................. 2, 5

§ 39.057(e) ................................................................................... 10

§ 39.058(b) .................................................................................. 14

§ 39.102(a) .................................................................................... 5

§ 39.102(a)(9) ............................................................................. 4, 6

§ 39.111(b) .................................................................................. 7, 8

TEX. GOV'T CODE § 2001.038 ........................................................... 25

19 TEX. ADMIN. CODE:

§ 97.1053(b) ................................................................................ 10

§ 97.1055(b)(2)(B)(ii) .................................................................... 22

§ 97.1059(b)(4) .............................................................................. 2

§ 97.1059(b)(1)(E)(2) ..................................................................... 22

§ 97.1059(b)(1)(G) ...................................................................... 5, 22

§ 97.1073(e) ................................................................................. 22

**Other Authorities**

Act of May 31, 2015, 84th Leg., R.S. ch. 1046, § 9, 2015, Tex. Gen.
Laws 3649 ................................................................................. 4, 11

Act of May 31, 2015, 84th Leg., R.S., ch. 1094, § 25(a), 2015 Tex.
Gen. Laws 3744 ............................................................................ 11

BLACK'S LAW DICTIONARY 1398 (10th ed. 2014) .............................. 16

# In the Court of Appeals for the Third Judicial District Austin, Texas

─────────

MICHAEL MORATH, IN HIS OFFICIAL CAPACITY AS TEXAS COMMISSIONER OF EDUCATION; AND MICHAEL BERRY, IN HIS OFFICIAL CAPACITY AS DEPUTY COMMISSIONER OF EDUCATION,

*Appellants*,

*v.*

PROGRESO INDEPENDENT SCHOOL DISTRICT,

*Appellee.*

─────────

On Appeal from the
354th Judicial District Court, Travis County

─────────

## REPLY BRIEF OF APPELLANTS

─────────

TO THE HONORABLE THIRD COURT OF APPEALS:

The nub of the District's argument is that there was no evidence of a continuation of the defects identified in the first Special Accreditation Investigation ("SAI") that could trigger the sanction of imposing a board of managers under any procedural scenario. But the Commissioner's authority to issue sanctions is not limited to rectifying the contents of the SAI report. And, tellingly, the District says next to nothing about the three instances of failure to follow applicable governance

policies identified in the separate documents submitted by the management team. *See* Appellant's Br. at 5-7 (detailing contents of management-team reports). Regardless of whether the power to impose a board of managers derives from the two-year tenure of the management team, or from the downgraded accreditation rating based on the management team reports, there is no basis to assail the Commissioner's actions as being outside his statutory authority.

There is no common-law right to have a court reweigh the evidence considered by the Commissioner and substitute its own notions of public policy for the Commissioner's statutory charge to trigger an SAI, Tex. Educ. Code § 39.057(d)(2), and to impose the relevant sanctions to remedy harm "to the public interest," 19 Tex. Admin. Code § 97.1059(b)(4). There is, thus, no basis for jurisdiction.

## ARGUMENT

The District has abandoned some arguments. *See* Appellee's Br. at 27 (disclaiming any substantive-due-process claim for inherent judicial review). And it has limited or recast others. *E.g.*, Appellee's Br. at 32-33 (reframing argument that section 39.102(b) has not been triggered to hinge on whether the Commissioner initialed the 'routing sheet' on the management team's quarterly reports). Not one of the District's arguments—even as reframed—provides a mechanism to affirm the

district court's baseless order, which fails to satisfy the minimum requirements for allowing an *ultra vires* claim to proceed to trial.

## I. THE COMMISSIONER'S ACTIONS ARE NOT SUBJECT TO JUDICIAL REVIEW.

To recap the Commissioner's position, the district court's order must be reversed on three theories: (1) that the management team has been in place for two school years under § 39.102(b), *see* Appellant's Br. at 34-35; (2) that the accreditation rating change validly triggered the imposition of a board of managers, based on the Commissioner's consideration of the second SAI report together with the management team's reports, *see* Appellant's Br. at 29-31; and (3) that the language of the Education Code and relevant rules forecloses judicial review of the Commissioner's actions by giving him plenary authority to decide policy for the Texas system of public schools, *see* Appellant's Br. at 23-25, 27-28.

**1.** The management team has been in place for two entire academic years. The District concedes that this fact obviates its counter-textual partial-year argument, *see* Appellee's Br. at 13, 46 (although nonetheless still makes that argument, *see* Appellee's Br. at 46-48). Now, however, it argues that the tenure of the management team does not trigger section 39.102(b) because the Commissioner did not put his initials on a 'routing sheet' on the management team's reports. *See* Appellee's Br. at 25-26; *see, e.g.*, PX.14 at 1 (example routing sheet). As explained below, not only is that argument untenable in light of the plain text of the Education Code, but it would undermine the separation of powers for a court to second-guess executive-department decision making based on extrapolation from internal executive-

3

department memoranda that are not subject to any particular statutory or rule-based procedural requirements. *See infra*, Part II.C.

**2.** Likewise—apart from attempting to avoid the necessary implication of the legal principles undergirding the Education Code and the *ultra vires* cause of action by repeatedly distinguishing those cases on their facts, *e.g.*, Appellee's Br. at 18 n.5, (attempting to distinguish reasoning of *Morath v. La Marque Indep. Sch. Dist.*, No. 03-16-00062-CV, 2016 WL 3517955, at *6 n.11 (Tex. App.—Austin 2016, no pet.) (mem. op.), on ground that it was based on annual-accreditation data[1])—the District attempts to sidestep the plain text of section 39.102 by arguing that the reference to SAI proceedings did not go into effect until the 2015 academic year, Appellee's Br. at 33-34. But that bill went into effect immediately, apart from the academic-ratings provisions. Act of May 31, 2015, 84th Leg., R.S. ch. 1046, § 9, 2015 Tex. Gen. Laws 3649, 3655. As explained below, the District has no basis to contest the Commissioner's power under the SAI and sanctions provisions of the Education Code. *See infra*, Part II.A.

**3.** Finally, there is no need to engage with the particular facts of this case. As the Court has already held, the phrase "to the extent the commissioner determines necessary" grants the Commissioner plenary authority. *Morath*, 2016 WL 3517955,

---

[1] *La Marque* cannot be so distinguished, because it plainly states that it is the phrase "to the extent the commissioner determines necessary" in section 39.102(a)(9) that grants the Commissioner "absolute discretion," 2016 WL 3517955, at *6 n.11. That same language is in section 39.057, which says that an SAI can result in a lowered accreditation status. Tex. Educ. Code § 39.057; *see* Appellant's Br. at 23-24. The facts are, of course different, *La Marque* arose from § 39.102(a)(9), which applies to annual accreditation data. *See* Tex. Educ. Code § 39.102(a)(9). But the legal principle involved is unambiguous and directly controlling.

4

at *6 n.11 (construing Tᴇx. Eᴅᴜᴄ. Cᴏᴅᴇ § 39.102(a)). He has the same authority to initiate an SAI. Tᴇx. Eᴅᴜᴄ. Cᴏᴅᴇ § 39.057(a)(15) ("as the commissioner otherwise determines necessary"); *see* Appellant's Br. at 23-24. An SAI, triggered by the Commissioner's necessity determination, can result in a lowered accreditation status. Tᴇx. Eᴅᴜᴄ. Cᴏᴅᴇ § 39.057(d)(2). As a result, he may also impose any sanction available under section 39.102, which provides that the Commissioner "shall" issue sanctions "to the extent the commissioner determines necessary." *Id.* § 39.102(a); *see also* Appellant's Br. at 20-22. While the District implies that the action must be based on information in the SAI report, the rules implementing the statute expressly states that the ultimate sanctions determination may be made based on "other information," 19 Tᴇx. Aᴅᴍɪɴ. Cᴏᴅᴇ § 97.1059(b)(1)(G), which necessarily includes the management-team reports. Apart from challenging the use of the post-2015 version of § 39.102(a), the District makes no argument regarding the plain meaning of the phrase "to the extent the commissioner determines necessary," which occurs throughout the relevant statutes. *See infra*, Parts II.E, and .F.

Moreover, the relevant administrative rules make these determinations administratively final. Coupled with the lack of a provision for retroactive judicial review, that finality precludes any *ultra vires* claim on this type of sanction. *See* Appellant's Br. at 27-28. While the District argues that administrative finality cannot create a carve out from the *ultra vires* cause of action, *see* Appellee's Br. 21-22, that position ignores Supreme Court precedent, *see infra*, Part II.D.

## II. There is No *Ultra Vires* Jurisdiction.

While the District attempts to argue that neither the plaintiff nor the district court had a burden to identify an alleged *ultra vires* act, *see* Appellee's Br. at 45, the test for *ultra vires* jurisdiction is whether the plaintiff has alleged, and can "ultimately prove," an act outside a defendant official's discretion. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). The district court's conclusory statement that there was a probability of success on the merits was not a proper analysis of the jurisdictional issues required to avoid dismissal. *E.g.*, *Gattis v. Duty*, 349 S.W.3d 193, 201 (Tex. App.—Austin 2011, no pet.). The easy answer in this case is that there can be no question that the Commissioner has authority to initiate an SAI and impose relevant sanctions, so it is impossible to plead that he has acted outside of his statutory and rule-based discretion.

### A. The Management Team's Two-Year Tenure Triggers section 39.102(b), Regardless of Whether the Commissioner Initialed a Series of Circulation Labels.

The District now argues that the management team is illicit because the Commissioner has not met a supposed burden to marshal evidence that he reviewed the management team's appointment on a quarterly basis.[2] Appellee's Br. at 25. That argument is simply wrong.

---

[2] Having acknowledged that there is no longer an argument available that the management team has been in place for less than two academic years, the District nonetheless renews its baseless argument that the Education Code applies only to complete academic years. Appellee's Br. at 46-48. As the Commissioner has already explained, section 39.102(b), by contrast to the provisions addressing annual accreditation review, expressly applies to partial academic years. *See* Appellant's Br. at 34-35 & n.14 (*comparing* § 39.102(b) *with* § 39.102(a)(9)). The District's citation of various other contexts in which the relevant time period is the academic year makes no difference because those provisions are expressly based on data collected for each academic year.

### 1. The quarterly-reports issue is a red herring.

The District states that it has "alleged and presented jurisdictional evidence that the Commissioner violated section 39.111(b) by maintaining the management team at the District without performing quarterly review mandated by the statute" and that the Commissioner's actions are, if not taken in compliance with certain procedural requirements, "not considered a state action" and are, therefore, "void." Appellees' Br. at 25; *see also id.* at 32-34. But that is not, in fact, the allegation made in the petition, and the underlying legal theory is incorrect.

The relevant allegation is that "there is no evidence that the Commissioner conducted the quarterly reviews." CR.1772 ¶ 131. This is not an allegation of fact, but an assertion of law.[3] The evidence on which the District relies for this argument addresses the fact that, while other officials at the Texas Education Agency signed a circulation label on documents being circulated within the agency, the

---

And the *reductio ad absurdum* argument that sanctions might be imposed based on only two days of management-team oversight ignores both the text of the statute and the practicalities of running an entire Texas-wide system of free public education. While the District points to new administrative orders based on annual accreditation data, Appellee's Br. at 47 n.15, like the orders it cited in the district court, these proceedings were based on annual accreditation review rather than SAIs and cannot support the assertion that an SAI must always be based on data from an annual review, *see* Appellant's Br. at 35 n.14.

[3] Similarly, the District makes the off-hand suggestion that it has alleged and presented evidence that the sanctions were based on an "unlawful special accreditation investigation." Appellees' Br. at 26. In fact, the allegation is that (1) a document called the "Special Investigation Procedures" governed the activities of the Division of Financial Compliance and (2) that these procedures applied "in conducting the second SAI." CR.1773-74 ¶¶ 136-138. That is not an allegation of fact; it is two assertions of law. As testimony elicited at the hearing showed, the "Special Investigation Procedures" were never applied to accreditation proceedings. 2.RR.79:19-81:18; *see infra*, Part II.C.2.a. As such, compliance with them is legally irrelevant. And, as explained below, there is no enforceable limitation on the SAI power in the applicable statutes and rules that could be the basis for an *ultra vires* claim.

Commissioner's initials are not present on some routing sheets. 2.RR.117:12-135:8. At most, then, the record suggests that the Commissioner did not initial a piece of paper. No statute requires the Commissioner to initial a circulation document to justify the activities of a given management team.

The District's legal theory (which the Court must addresses *de novo*) is untenable. The statute states:

> (b) At least every 90 days, the commissioner shall review the need for the conservator or management team and shall remove the conservator or management team unless the commissioner determines that continued appointment is necessary for effective governance of the district or delivery of instructional services.

TEX. EDUC. CODE § 39.111(b). The Commissioner did not remove the management team, which is sufficient evidence that the Commissioner did not deem it necessary to remove the team based on the quarterly records. Nothing in the Education Code requires the Commissioner to manifest such an intent in writing, or by checking a box on a form. Accordingly, the District's appellate briefing fails to articulate a valid legal argument that the tenure of the management team triggered the Commissioner's authority to impose a board of managers.

### 2. The quarterly-reports issue exemplifies the unconstitutional scope of the District's view of the ultra vires cause of action.

As explained in the Appellant's Br., *see* Appellant's Br. at 32-34, the District's arguments would create an unconstitutional grant of judicial review authority to the courts contrary to the text of the Education Code and Article II, § 1 of the Texas Constitution. The quarterly-report issue lays bare the core problem with the

District's approach: it would graft judge-made procedural requirements onto the internal decision-making processes of an executive-department entity. By that view, after discovery, any executive-department action could be subjected to judicial review if it had been arrived at orally, after internal consultation, rather than in written documents. The District offers no limiting construction to its legal theory that the absence of a written internal memorandum renders the Commissioner's actions retroactively void. And this newly-created judicial power *could* have no practical limitation, because it depends on the proof of a negative. Courts could always create *post hoc* procedural hurdles for the executive department, then hold that executive actions were void for failure to comply with these newly discovered internal paperwork requirements.

That is not how the Texas Constitution conceives of the relationship between the executive and judiciary departments. TEX. CONST. art. II, § 1; *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 173 (Tex. App.—Austin 2013, no pet.). The limitation on declaratory relief protects the "policy judgments embodied in the constitutional or statutory delegations that define the parameters of an officer's discretionary authority and the decisions the officer makes within the scope of that authority." *Livingston v. Beeman*, 408 S.W.3d 566, 572-73 (Tex. App.—Austin 2013), *aff'd* 468 S.W.3d 534, 538 (Tex. 2015) ("whether Livingston's actions were *ultra vires* depends on whether the statute required anything of him").

## B. The Three Governance Failures Support the Commissioner's Exercise of Discretion.

The three instances of poor governance processes articulated in the management reports, *see* Appellant's Br. at 5-7; *see also id.* at 14 (pointing out that District has never argued that it followed appropriate governance practices), are a sufficient basis to impose all the sanctions at issue in this appeal, independent of the two-year tenure of the management team. An SAI order can result in sanctions or a lowering of the accreditation rating, or both, TEX. EDUC. CODE § 39.057(d). And the Commissioner has authority to impose a board of managers if it is necessary "to improve any area of a district's . . . performance," *id.* § 39.057(e); *see also* 19 TEX. ADMIN. CODE § 97.1053(b). The repeated failure to comply with traditional governance norms, based either on the SAI or continued poor performance on governance issues, is a matter of public interest that justifies the sanctions imposed.

## C. Sections 39.057 and 39.102 Also Preclude an *Ultra Vires* Claim.

The District does not assert that the three governance failures identified by the management team were properly handled by the Board. *But see* Appellee's Br. at 6 (asserting that hiring Cuellar as Superintendent was appropriate because he had adequate experience as a matter of fact). Instead, it presumes (without basis) that these occurrences cannot support the sanctions imposed because they were not included at some point in the SAI paperwork. That is wrong.

### 1. The 2015 amendments to section 39.057(d)(2) apply in this case.

The District attempts to circumscribe the Commissioner's power by arguing that the current version of section 39.102 does not apply in this case. Appellee's Br.

at 33-34. This assertion doesn't make a difference: it is merely another shade of the argument that an SAI can't result in sanctions that aren't justified by an entire year's accreditation reporting. *See* Appellant's Br. at 38-39 & n. 15. The old version of the statute is subject to the same practical concerns regarding implementation.

Nonetheless, the 2015 language applies to this lawsuit because it went into effect and governed the scope of the Commissioner's powers, without reservation, from the moment it was passed by a supermajority. Act of May 31, 2015, 84th Leg., R.S., ch. 1046, § 20, 2015 Tex. Gen. Laws 3649, 3662. The District focuses on a separate provision stating that the changes go into effect for "academic performance ratings" performed in 2015. Appellee's Br. at 34 (discussing section 19 of HB 1842). A Special Accreditation Investigation is not an "academic performance rating;" it is an investigation into all aspects of a district's accreditation, taken outside the annual-review process.[4] TEX. EDUC. CODE § 39.057; *see also* Appellant's Br. at 22-24, 38-40 (explaining that SAIs are, necessarily, different from the ordinary annual accreditation process). The relevant language of § 39.102 went into effect immediately and apply to these proceedings.

To be sure, it is hypothetically possible for a school district to raise a claim that HB 1842 could not apply retroactively consistent with the due-course-of-law

---

[4] The District highlights the fact that the language on which it relies applies only to the portions of H.B. 1842 that apply to academic accreditations by paraphrasing the effective date language of a related bill, HB 2804. Appellee's Br. at 34 n.12. That provision provides that the *entire* relevant act went into effect for the 2016-17 *school year*. Act of May 31, 2015, 84th Leg., R.S., ch. 1094, § 25(a), 2015 Tex. Gen. Laws 3744, 3757. If the Legislature intended to delay the addition of a sanctions power based on an SAI, it would have delayed the effective date of the entirety of H.B. 1842, just as it did H.B. 2804.

provision. *E.g.*, *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015)). Not here. Such a claim would require the District to establish a vested property right in the outcome of these proceedings. *Id.* In response to the Commissioner's argument that the District is incapable of forming such a property interest, *see* Appellant's Br. at 18-21, the District has chosen not to brief the issue.

At any rate, the Court addressed and rejected a similar argument in *La Marque*, which involved a change to the financial-accountability standards, 2016 WL 3517955, at *6. The Court properly held that the provision in question applied retroactively because the district lacked any vested property interest in its accreditation status, or the relevant standards, and therefore could not meet the test. *Id.* at *8 (remarking that to bring a retroactivity claim, "like all constitutional claims, a [plaintiff] must have a liberty or property interest that is entitled to constitutional protection. A constitutionally protected right must be a vested right, which is 'something more than a mere expectancy based upon an anticipated continuance of an existing law.'" (quoting *Klumb*, 458 S.W.3d at 15)). Just as La Marque Independent School District lacked a vested property interest on which to base a retroactivity claim, Progreso Independent School District cannot now argue that §39.102's amended language did not apply to this litigation from the moment it went into effect.

### 2. There are No Procedural Requirements to render an SAI valid.

As the Commissioner explained in his opening brief, the Education Code's procedural requirements for an investigation and accreditation determination are quite simple and have been complied with, as demonstrated in the record. *See* Appellant's Br. at 26-27. Appellees suggest that there are specific requirements set

out in a document governing "Special Investigation Procedures," and that any deviation from those formal requirements renders any resulting executive-department action void. Appellees' Br. at 38-39. The specified requirements do not apply to this proceeding; they apply to something else.

### a. The document on which the District relies does not govern SAIs.

The "Special Investigation Procedures" document, as explained in the record, 2.RR.65:24-66:2 (Q: "Your testimony is that these documents were not attached to the letter that you sent? A: Not to the letter I signed. I would have signed the letter with the first two pages."), was not applied to the SAIs but was instead produced as part of the separate attendance-audit that has triggered parallel litigation, *see* 2.RR.68:11-:13 ("These documents were produced . . . in the other residency litigation"). It was an artifact of a prior investigatory regime governing financial-compliance issues. 2.RR.77:16-78:4. As Dr. Dawn-Fisher testified at the hearing, accreditation investigations were previously handled on an ad hoc basis by an individual named Emi Johnson; Dr. Dawn-Fisher's unit did not use these rules in performing the SAIs in this case. 2.RR.79:19-81:18 (explaining that the SAI procedures are in a separate document called the "Special Procedures Manual"). The document is irrelevant to the legal question whether the live petition describes an *ultra vires* act.

### b. Even if it did control, there would be no procedural defect that subjected the Commissioner's actions to collateral judicial attack.

Even if they were relevant, the very nature of the supposed procedural defects on which the District relied would make them an improper basis for an *ultra vires* suit. The District suggests that (1) "only the Commissioner can expressly authorize an SAI," (2) that the District must receive written notice, and (3) that the preliminary report include "any recommendation of sanctions." Appellees' Br. at 38-39. The District further suggests that it was not given an opportunity for an informal review. Appellees' Br. at 39. The record satisfies these requirements, and any procedural defect cannot render the sanctions *ultra vires*.

It is unclear how the Commissioner could better manifest his authorization of an investigation than by instituting that investigation. The District apparently believes that the form of an internal communication can void all subsequent investigatory proceedings. As explained in the opening brief, that type of formal review is improper outside the scope of a statutory grant of judicial review imposing particular procedural requirements. Appellant's Br. at 39-40.

The allegation in the live petition is that the Commission never provided *written* notice of the onsite investigation work tied to the second SAI. CR.1737 ¶ 30. That is not the same thing as an asserted lack of *any* notice. Appellee's Br. at 44 ("there was no notice"). The Education Code requires only notice and a subsequent administrative proceeding, not a specific form of notice tied to the SAI itself. Tex. Educ. Code § 39.058(b).

14

Moreover, the record includes a produced copy of the notice of the SAI, albeit not the notice actually served on the District. 2.RR.97:4-23. And the letters setting up the formal and informal review before Dr. Berry independently provide notice of the sanctions, with an opportunity to be heard, DX.9 at 4 (explaining challenge procedures after providing notice of suggested sanctions), and resulted in the full process contemplated by the Code and administrative rules, DX.14 at 1-2.[5] Given that the District opposed the sanctions and participated in the hearing before Deputy Commissioner Berry, the *ultra vires* claim is based on the absence of a signed written notice in the record rather than a substantive failure to provide notice. The undisputed fact that the District formally opposed the sanctions and participated in the proceeding before Dr. Berry cures any picayune procedural problem regarding the form of notice of the sanctions to be imposed.

Even assuming the lack of a written notice occurred as alleged, it cannot lead to a determination that all the coordinate proceedings are void. As the Commissioner explained in his opening brief, procedural defects are not an appropriate basis for *ultra vires* claims.[6] *See* Appellant's Br. at 18, 31. The District does not deny this;

---

[5] These exhibits can be found at tabs J and M in the appendix to the State's opening brief.

[6] The District attempts to limit the relevant cases to their facts. *See* Appellee's Br. at 26 n.10 (discussing *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Authority*, 96 S.W.3d 519 (Tex. App.—Austin 2002, pet. denied), and *Pharmserv, Inc. v. Tex. Health & Human Servs. Comm'n*, No. 03-13-00526-CV, 2015 WL 1612006 (Tex. App.—Austin 2015, no pet.) (mem. op.). But those cases say that a plaintiff must establish that a defendant official has acted "wholly outside their authority" to bring a claim that a defendant has exceeded statutory authority. *Pharmserv*, 2015 WL 1612006, at *7; *Friends of Canyon Lake*, 96 S.W.3d at 528; *see also Tex. Logos, LP v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 121 (Tex. App.—Austin 2007, no pet.) (distinguishing *ultra vires* cases related to contracts to hold that ultra vires relief available only when defendant lacked authority to enter contract in first instance).

15

instead it argues that its positions regarding both the form of notice served and the presence or absence of Commissioner's signature on a series of 'routing sheets' are substantive, rather than procedural, defects. *See* Appellee's Br. at 24-26, 39, 49. That characterization is not credible. Under the ordinary definition of the term "procedural," the defects about which the District complains are procedural. *E.g.*, Black's Law Dictionary 1398 (10th ed. 2014) ("procedural law: The rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves").

## D. The Finality Provisions Are Independently Dispositive of the Claim.

The District suggests that the administrative rules making the Commissioner's actions final cannot foreclose an *ultra vires* suit because they are based on a plurality opinion and because they are found in an administrative rule. Appellees' Br. at 21-22; 39-41 (responding to Commissioner's reliance on the plurality and concurring opinions in *Morath v. Sterling City Indep. Sch. Dist.*, No. 14-0986, 2016 WL 3537025 (Tex. 2016)). Not so; *Sterling City* controls. And as the Court stated in *La Marque*, retroactive relief is improper, 2016 WL 3517955, at *6 (calling injunction of an abatement order "an impermissible—and at this point impossible—request for retroactive relief").

As the Commissioner has explained, a plurality opinion can be binding if a majority of the Supreme Court adopts a particular legal justification for its judgment, *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 176 (Tex. 1994), a rule that is consistent with United State Supreme Court practice, *Marks v. United*

*States*, 430 U.S. 188, 193 (1977); *see* Appellants' Br. at 27-28 n. 12. The District does not assert that *Sterling City* does not meet the *York/Marks* test: it merely assumes that plurality opinions can never be binding. *York* does not foreclose application of the *Marks* rule, 871 S.W.2d at 176 (plurality was not controlling where "no majority for the Court expressed a single rationale supporting the judgment rendered").

And while it is true that most finality-clause litigation involves statutory language, the Commissioner has rulemaking authority over the relevant procedures in these cases and has provided various levels of review for different levels of sanction. Rules are treated as statutes. *AEP Tex. Commercial & Indus. Retail Ltd P'ship v. Pub. Util. Comm'n*, 436 S.W.3d 890, 905-06 (Tex. App.—Austin 2014, no pet.). And the District has not challenged the validity of the finality rule.

## E. The District's Various Arguments Regarding the Scope of the *Ultra Vires* Cause of Action Fail.

Relying primarily on the Texas Supreme Court's recent decision in *Houston Belt & Terminal Railway Co. v. City of Houston*, 487 S.W.3d 154 (Tex. 2016), and on now-superseded language regarding declarations regarding "rights" in *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex. 1997), the District suggests that there is no meaningful jurisdictional limitation on the ultra vires cause of action. *See* Appellee's Br. at 16-22. Simply not so. The *ultra vires* cause of action is narrowly tailored to avoid becoming a mechanism for the judiciary to substitute its policy preferences for those of the executive department whenever a district-court judge sees fit to intervene in a policy dispute.

The District relies on *Houston Belt* for the proposition that a case can go to trial automatically if there is a limited exercise of discretion. Appellee's Br. at 40 n.13. Again, not so. Courts often dismiss *ultra vires* claims involving limited grants of discretion. *E.g.*, *Tex. Educ. Agency v. Amer. Youthworks, Inc.*, 496 S.W.3d 244, 256-57 & n.58 (Tex. App.—Austin 2016, pet. filed) (citing *Houston Belt*). And the Supreme Court has performed the relevant inquiry subsequent to *Houston Belt. E.g.*, *Morath v. Sterling City Indep. Sch. Dist.*, No. 14-0986, 2016 WL 3537025, at *5 (Tex. June 24, 2016). *Houston Belt* did not change the law; it merely rebutted the court of appeals's conclusion that there could *never* be an *ultra vires* suit based on a limited grant of discretion, a position the Commissioner does not advance here. The mere fact that a defendant official has some discretion to act under a statute does not lead a fortiori to the conclusion that he has absolute discretion; that is why courts perform statutory construction in resolving *ultra vires* claims. *See Klumb*, 458 S.W.3d at 11.

Despite the District's attempt to distinguish them on their facts, the cases do not contemplate general, common-law judicial review of executive-department action. *E.g.*, *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex. 2001) ("Texas law recognizes no right to judicial review of an administrative order. . . .").[7] *City of El Paso v. Heinrich* was expressly structured to avoid creating a general

---

[7] Continuing the pattern of avoiding legal principles by reciting irrelevant facts, the District argues that *Little-Tex* cannot apply because it involved a contract. Appellee's Br. at 20 & n.6. But *Little-Tex* reaffirms longstanding precedent foreclosing common-law judicial review in the context of resolving a contract claim. That restatement of the law is pertinent to the legal resolution of the contract claim, but is not solely tied to that claim. And it has been applied in *ultra vires* suits. *See, e.g.*, *County of La Salle v. Weber*, No. 03-14-00501-CV, 2016 WL 1084100, at *7 (Tex. App.—Austin 2016, no pet.) (mem. op.) (applying *Little-Tex*'s statement to *ultra vires* claim). Likewise, other cases that the District attempts to cabin to their facts have been applied in the other relevant

common-law right to judicial review, 284 S.W.3d at 372. The primary cases on which the District relies either predate *Heinrich*, *see* Appellees' Br. at 19 (citing *Federal Sign*, 951 S.W.2d at 404), or involve the assertion of a right to property that was not arrived at following an exercise of statutory discretion, *id.* at 19-20, 21 (discussing *Tex. Parks & Wildlife Dep't v. The Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011). As the opening brief pointed out, *Heinrich* superseded *Federal Sign*'s discussion regarding declarations of rights, and ample authority makes clear that there is no common-law right to judicial review. Appellant's Br. at 16 n.9.

*Sawyer Trust* does not involve agency determinations, but rather incorporates longstanding case law involving a common law right to challenge the State's assertion of title to property even though trespass-to-try-title claims are barred by sovereign immunity, 354 S.W.3d at 393-94. Indeed, the gravamen of *Sawyer Trust*'s reasoning is that the executive department defendant had not acted at all, but was nonetheless subject to suit based on an alleged improper exercise of ownership. *Id.* And *Heinrich* itself draws a line between going back in time to undo a past act (which

---

contexts. *See, e.g.*, *La Marque*, 2016 WL 3517955, at *11 (citing *In re Office of the Att'y Gen.*, 456 S.W.3d 153, 157 (Tex. 2015) as basis for dismissing claim for judicial review of accreditation sanctions under Education Code). Nor are more recent cases distinguishable. *See* Appellee's Br. at 22 n.8 (discussing *American YouthWorks* and *Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envt'l Quality*, 307 S.W.3d 505 (Tex. App.—Austin 2010, no pet.). While *American YouthWorks* discussed a finality clause, it separately held that a charter school is limited to asserting inherent-review claims because there is no availability of judicial review under the Education Code sanctions provisions, 496 S.W.3d at 257. *Creedmoor-Maha* disallowed "injunctive relief restraining the order's enforcement," 307 S.W.3d at 514. And *Creedmoor-Maha* has never been read to be limited to finality-clause provisions. *E.g.*, *Merritt v. Cannon*, No. 03-10-00125-CV, 2010 WL 3377778, at *3 (Tex. App.—Austin 2010) (mem. op.) (citing *Creedmoor-Maha* for proposition that ultra vires claim asserting that agency made a wrong decision when exercising statutory authority and was not, therefore, subject to ultra vires suit).

would have been required for *Heinrich* to recover pension funds withheld in the past) and (potentially) requiring future pension payments as they came due, following a judgment requiring that payment, 284 S.W.3d at 372-75. But an ongoing pension obligation is not "final"; by its very nature, it creates a new obligation every month, so it can be awarded prospectively. Allowing retroactive relief to undo already-final executive-department action would, in effect, broaden the *ultra vires* cause of action to encompass judicial review of every executive-department action.[8]

Finally, the District argues that its requested relief is prospective, and thus sidesteps the bar on common-law judicial review, because the board of managers has not yet sworn an oath. Appellee's Br. at 23. Like the argument that the form of notice of the second SAI voids the Commissioner's action, this assertion elevates form over substance. If an *ultra vires* claim can result in an injunction against the results of an action, rather than the taking of the action in the first instance, the *ultra vires* claim

---

[8] The District cites cases that, it asserts, properly enjoin the results of an already-final executive-department action. *See* Appellee's Br. at 19-20 (discussing *Brewster v. Roicki*, 468 S.W.3d 134 (Tex. App.—San Antonio 2015, no pet.) and *City of New Braunfels v. Tovar*, 463 S.W.3d 913 (Tex. App.—Austin 2015, no pet.). But *Roicki* involved an injunction requiring one governmental entity to follow the final order of *another* governmental entity, 468 S.W.3d at 142 (pointing out that Texas Department of Motor Vehicles had no right of judicial review regarding county tax assessor's determination). And the plaintiff in *Tovar* did not seek injunctive relief regarding the grade on his test, but rather an amendment to his personnel file on an ongoing basis because points had been left off that a statute required by included in the file, 463 S.W.3d at 920. The District further attempts to distinguish other cases. *See* Appellee's Br. at 22-23 n.9 (attempting to distinguish *Meritt* and *N. Alamo Water Supply Corp. v. Tex. Dep't of Health*, 839 S.W.3d 455 (Tex. App.—Austin 1992, writ denied)). But *Meritt* is on all fours with this case, because it involved a challenge to a discretionary act based on a disagreement with the outcome, 2010 WL 3377778, at *3. And *North Alamo* says what it says: "The fact that the [executive-department defendant might decide 'wrongly' in the eyes of an opposing party does not vitiate the [defendant's] jurisdiction to make [the] decision," 839 S.W.2d at 459.

will be transformed into a vehicle for common-law judicial review contrary to Texas Supreme Court precedent.

\* \* \*

Not to put too fine a point on it, the District asserts that procedural irregularities in executive-department actions render them perpetually subject to collateral judicial attack. Appellee's Br. at 19. And it argues that the use of the words "appropriate action" in a statute makes the Commissioner's actions subject to judicial second-guessing based on a new-minted factual record in the district court because only a court can decide what action is "appropriate." *See* Appellees' Br. at 31-32 (discussing Tex. Educ. Code § 39.057(d), and asserting that it is the courts' role to decide what is "appropriate action" whenever the Commissioner acts). This argument boils down to a bare assertion of judicial power to second-guess executive-department policy determinations. Consistent with this impossibly broad view of the *ultra vires* case law, the District suggests that the *ultra vires* cause of action is itself a form of judicial review. Appellees' Br. at 20 n.6 (asserting that *ultra vires* claims "provide an exception to the rule precluding judicial review."). That position cannot be squared with precedent or with the Constitution. *E.g.*, *Combs v. City of Webster*, 311 S.W.3d 85, 91 (Tex. App.—Austin 2009, pet. denied) ("It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute proves a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right" (quoting *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex.

21

2000) and citing *Stone v. Tex. Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)).

## F.  The District's remaining procedural arguments fail.

The District clings to the purported absence of "persistent deficiencies" in the text of the second SAI as a basis for invalidating the sanctions. Appellees' Br. at 29-30 (discussing 19 Tex. Admin. Code § 97.1055(b)(2)(B)(ii)). This is smoke and mirrors. The sanctions do not have to be based on the SAI alone, but can be based on any "other information." 19 Tex. Admin. Code § 97.1059(b)(1)(G). The management team reported three examples of persistent, systemic failure to maintain good governance processes. The continued failure to use good governance practices was a persistent failure that, evidently, was never adequately addressed.[9]

Moreover, contrary to the District's assertions, section 97.1059 supports the Commissioner's actions. *See* Appellees' Br. at 30-31. That provision allows a lowered accreditation status based on "patterns of recurring deficiencies." 19 Tex. Admin. Code § 97.1059(b)(1)(E)(2). The management-team reports show a recurring deficiency in governance practices, which was noted in every report starting with the initial SAI. *See* CR.179-299; CR.235-36; PX.1 at 94; *see also*

---

[9] The District implies, without citing authority, that it should be exempt from *any* sanction because it complied with its own self-created remediation plan. *See* Appellee's Br. at 8. Nothing in the statute or the rules ties the availability of sanctions, including an accreditation downgrade or the imposition of a board of managers, to compliance with the particular requirements of an improvement plan. If that were so, a board of trustees like Progreso's could sidestep any requirement that they actually carry out decision-making using traditional, open, predictable forms of public governance merely by ticking of checkmarks on a clipboard.

CR.160.[10] For the same reasons, section 97.0173's recognition that a board of managers reflects an increased level of sanction and must be triggered by the ineffectiveness of prior interventions, 19 TEX. ADMIN. CODE § 97.1073(e), cannot invalidate the Commissioner's actions, *see* Appellee's Br. at 36-37.

## III. THE RIGHTS OF THE DISTRICT ARE NOT IMPLICATED BY THE COMMISSIONER'S ACTIONS AND CANNOT SUPPORT A FINDING OF HARM.

The District recites the fact that the district court's order mentions all the elements to support a temporary injunction, but it provides no legal basis for sustaining the issuance of the temporary injunction. Rather, the District argues that there is no need to conduct the relevant inquiry because it is a governmental entity that has standing (in limited circumstances) to bring constitutional challenges to statutes. Appellee's Br. at 50-51. Standing to represent citizens is irrelevant to the question whether the District is actually harmed as an entity by the operations of a sanctions regime to which the District is subject by statute.

The District suggests that the citizens within the district, and the district itself, have a cognizable harm based on the replacement of the elected members of the Board. Appellee's Br. at 49-51. It reaches this conclusion based on case law addressing governmental entity standing to bring constitutional claims based on harm to their constituents. *Id.* at 50 (citing *Neeley v. West Orange-Cove Consol. Indep.*

---

[10] The District continues to assert that it is relevant that an accreditation standard can be lowered based on non-compliance with TEA orders. *See* Appellees' Br. at 30-31. But that issue is irrelevant, because the Deputy Commissioner declined to make the predicate finding, and, as a result, the sanctions were not based on non-compliance.

*Sch. Dist.*, 176 S.W.3d 746, 774 (Tex. 2005)). The District's argument misunderstands the nature of governmental-entity standing and, as a result, fails to make a valid argument related to the lack of a harm finding in the district court's temporary-injunction order.

A governmental entity has standing to sue on behalf of its constituents when it is charged with implementing a potentially unconstitutional statute against their interests. *E.g.*, *West Orange-Cove*, 176 S.W.3d at 774. That is irrelevant to the question whether removing an ineffective set of elected district members *harms* the district, as an entity, or the taxpayers in the district. This is not a constitutional challenge to a statute. Nor is there any cognizable harm to the district as an entity. The district itself remains unchanged; it would be run by different elected officials over time, in any event. And while the voters of the Progreso Independent School District may have an interest in the outcome of their choice of elected board members, this lawsuit is not brought by the taxpayers, but rather by the District itself. That the District might have standing to bring constitutional challenges to some statutes does not mean that it has a cognizable interest in *all* potential litigation involving oversight by the State of Texas. *See City of Austin v. Central Appraisal District*, No. 03-16-00038-CV, 2016 WL 6677937, at *6 (Tex. App.—Austin November 10, 2016, no pet. h.) (standing to sue limited to circumstances where local government required to implement allegedly unconstitutional statute).

\* \* \*

While the District makes much of local control, it fails to cite any case suggesting that local control is paramount over the textual requirements of the Texas

24

Constitution. The Constitution requires the establishment of "an efficient system of public free schools." TEX. CONST. art. VII, § 1. It does not say that local school districts can run themselves however they like. It is the accreditation provisions of the Education Code that allow the Commissioner to ensure that each district is, in its way, an appropriate part of an entire system of public education.

## IV. The District is Not Entitled to a Remand to Raise New Legal Theories.

The District suggests that it is entitled to a remand so that it can articulate a challenge to the relevant administrative rules. Appellees' Br. at 42. n.14. The Texas Supreme Court has expressly rejected that practice. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) ("Generally, remand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction."). It would be inappropriate to remand this case to turn it into a rule challenge under § 2001.038 of the Government Code.

# PRAYER

The Court should reverse the trial court's judgment, vacate the temporary injunction, and render judgment dismissing the lawsuit with prejudice.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General

KRISTOFER S. MONSON
Assistant Solicitor General

/s/Kristofer S. Monson
KRISTOFER S. MONSON
Assistant Solicitor General
State Bar No. 24037129
*kristofer.monson@oag.texas.gov*

Counsel for Appellants

## CERTIFICATE OF SERVICE

On November 18, 2016, this document was served electronically on Darren G. Gibson, lead appellate counsel for Progreso Independent School District, via *dgibson@808west.com.*

/s/ Kristofer S. Monson
Kristofer S. Monson

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 7210 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/Kristofer S. Monson
Kristofer S. Monson